**THE LAW OFFICES OF JOHN L. BURRIS**
JOHN L. BURRIS, Esq. (SBN 69888)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile:  (510) 839-3882
john.burris@johnburrislaw.com

**THE LAW OFFICES OF JOHN L. BURRIS**
DeWITT M. LACY, Esq. (SBN 258789)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile:  (510) 839-3882
dewitt.lacy@johnburrislaw.com

Attorneys for Plaintiff(s)
Teresa Perkins

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

TERESA PERKINS, as Successor-in-Interest to Decedent Justin Perkins; and DAVID MICHAEL PERKINS

    Plaintiff,

  vs.

CITY OF ANAHEIM, a municipal corporation; SHIAO WANG, individually and in his capacity as a police officer for the CITY OF ANAHEIM; KENNY LEE, individually and in his capacity as a police officer for the CITY OF ANAHEIM; KENNETH EDGAR, individually and in his capacity as a police officer for the CITY OF ANAHEIM; RICKY REYNOSO, individually and in his capacity as a police officer for the CITY OF ANAHEIM; CASEY MORRISON, individually and in his capacity as a

Case No.: 8:19-cv-00315-JLS-JDE

*(Hon. Josephine L. Staton)*

**PLAINTFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**
*(Filed concurrently with the supportive Declaration of DeWitt M. Lacy and Statement of Controverted Facts)*

Date:  February 19, 2021
Time:  10:00 A.M.
Ctrm.:  10A
Trial Date: N/A

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

police officer for the CITY OF ANAHEIM; and DOES 1-50, inclusive, individually and in their official capacities as Police Officers for the CITY OF ANAHEIM Police Department

Defendants.

## **Table of Contents**

**INTRODUCTION**………………………………………………………**4**

**STATEMENT OF FACTS**………………………………………………**6**

*Disturbance at Madison Square Apartments*…………………………**6**

*Experience and Expertise Heading to Investigate*……………………**6**

*Knock, knock…*…………………………………………………………..**7**

*Put Up Your Dukes!*........................................................................................**8**

*No Rest for the Weary*…………………………………………………**8**

*Dead on Arrival*……………………………………………………….**9**

**ARGUMENT**………………………………………………………………**11**

**Defendants Use of Force was Objectively Unreasonable Because Justin was not acting Violently Before the Unlawful Intrusion Into His Home or After he was Handcuffed**…………………………**11**

**Defendants' Improperly Denied Medical Care to Justin During the Final Critical Moments of His Life**……………………………………**20**

**The Court Should Deny Defendants' Claim for summary Judgment of Plaintiffs' Claim for Violation of Substantive Due Process**………**22**

**State Claims Must Survive**……………………………………………**23**

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**Defendants are not Entitled to Qualified Immunity…………………25**

**Punitive Damages…………………………………………………29**

**CONCLUSION………………………………………………………..29**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

1

# __Table of Authorites__

2

3

## CONSTITUTIONAL PROVISIONS

U.S. Const. amend. IV. ................................................................................................ 7

4

5

## STATUTES

6

42 U.S.C. § 1983 ........................................................................................................ 24

7

Cal. Civ. Code, § 52.1 ............................................................................................... 27

8

9

## CASES

Acosta v. Hill, 504 F.3d 1323 (9th Cir. 2007) ......................................................... 14

10

*Abston v. City of Merced,* 506 Fed.Appx. 650 (9th Cir. 2013) ................................ 20

11

*Arce v. Blackwell*, 294 Fed. Appx. 259 (9th Cir. 2008)........................................... 28

12

*Ayala v. City of South San Francisco*, 2007 WL 2070236 ................................. 21, 22

13

*Bonivert v. City of Clarkson*, 883 F.3d 865 (9th Cir. 2018).................................... 21

14

*Cameron v. Craig,* 713 F.3d 1012, 1022 (9th Cir. 2013)......................................... 27

15

*Chaudhry v. City of Los Angeles*, 751 F.3d 1096, 1105–06 (9th Cir. 2014)............ 27

16

*City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244-45 (1983) ...... 23

17

*Coley v. Lucas Cty.*, 799 F.3d 530, 541 (6th Cir. 2015) .......................................... 22

18

*Cornell v. City and Cnty. of San Francisco,* 17 Cal. App. 5th 766 (Ct. App. 2017) ............... 27

19

*Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) .............................. 19

20

*Deorle v. Rutherford*, 272 F.3d 1272 (9th Cir. 2001) ....................................... 15, 29

21

*Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003).......................... 21, 20, 28,29

22

Espinosa v. City & Cnty. of S.F., 598 F.3d 528 (9th Cir. 2010)............................... 14

23

Graham v. Connor, 490 U.S. 386 (1989)................................................................. 14

24

*Gregory v. Cnty. of Maui*, 523 F.3d 1103 (9th Cir. 2008) ................................. 15, 20

25

*Han v. City of Folsom*, --Fed.Appx.--, 2014 WL 59731 (9th Cir. 2014) ................. 25

26

*Hayes v. County of San Diego*, 57 Cal.4th 622 (2013) ........................................... 25

27

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

*Hope v. Pelzer* (2002) 536 U.S. 730 ............................................................................. 29

Jones v. Kmart Corp., 17 Cal.4th 329 (1998) ............................................................ 27

*Jones v. Las Vegas Metropolitan Police Department*, 873 F.3d 1123, (9th Cir. 2017).......... 21

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) ...................................................... 21

*Meredith v. Erath*, 342 F.3d 1057 (9th Cir. 2003) ..................................................... 20

*Pearson v. Callahan*, 555 U.S. 223 (2009) ............................................................... 28

*Santos v. Gates*, 287 F.3d 846 (9th Cir.2002) ...................................................... 14, 15

*Saucier v. Katz*, 533 U.S. 194 (2001) ............................................................... 27, 28

Scott v. Harris, 550 U.S. 372 (2007) ....................................................................... 14

*Scott v. Henrich*, 39 F.3d 912 (9th Cir.1994) ...................................................... 15, 19

*Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005) .............................................. 15

*Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) ............................... 21, 22

*Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993) ....................................... 22

*Venegas v. County of Los Angeles*, 32 Cal.4th 820 (2004) ....................................... 27

*Zelaya v. Las Vegas Metropolitan Police Department*, 682 Fed.Appx. 565 (9th Cir. 2017) ........................................................................................................ 20

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

## **MEMORANDUM OF POINTS AND AUTHORITIES**

## **INTRODUCTION**

Plaintiffs, Teresa Perkins, the mother of Decedent Just Perkins ("Justin" or "Decedent"), and David Michael Perkins, uncle and percipient witness to Justin's death, oppose the Defendants' Motion for Summary Judgment. This wrongful death action arises from the brutal beating and killing of Justin during an arrest by a number of Anaheim Police Department officers on October 27, 2018. Plaintiffs contend there is no justification for the use of force and restraint inflicted on Justin by Defendants Kenny Lee, Shaio Wang, Kenneth Edgar, and Ricky Reynoso, and Casey Morrison. Plaintiffs further contend undeniable evidence supports the proposition that the beating inflicted by defendant officers played a significant role in Justin's Death.

The right of persons to be "secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" has long since been protected by the Fourth Amendment to the United States Constitution. (U.S. Const. amend. IV.) Case law in the United States District Courts for the Northern, Eastern, and Central Districts of California support the denial of qualified immunity for the Defendants in this matter. Moreover, the Ninth Circuit has held like force used in similar circumstances to be excessive and violative of an individual's Constitutional rights.

Respected medical professionals agree Justin died as a result of a combination of conditions, but primarily restraint asphyxia, injuries to his head and multiple TASER applications beyond need. The testimony of Timothy Williams, Jr., a retired Senior Detective Supervisor for the Los Angeles Police Department and a police practices expert, supports Plaintiffs' contentions the use of baton blows to the head and face, the multiple TASER applications, placing weight on Justin's back and shoulders as he lay prone on the ground,

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

and hog-tieing him represents a significant departure from the best police practices followed in the State of California. Sr. Detective Williams' testimony further supports Plaintiffs' contention that the Defendants were either not adequately trained, or deliberately and purposefully disregarded minimum standard police practices mandated by the California Commission on Peace Officer's Standards and Training.

The Defendant officers clearly failed in their tactical considerations of how they should have investigated the alleged misdemeanor assault that occurred outside of their presence. The Defendant officers were trained that applying pressure to a person's back while they are being restrained in a prone position can result in asphyxiation. The Defendant officers were trained that repeated TASER applications to an individual can result in fatality. The Defendant officers were told the hobble device could cause unnecessary struggle and harm. Nonetheless, the Defendant officers ignored this training and repeatedly applied a TASER to Justin's back. They forced Justin to lie in a position that compromised his breathing, knowing the significant and great risk of causing significant injury or death to Justin. Then the defendant officers ignored the patent signals of impending death and deliberately forced Justin to lay hog-tied in a prone position while he was in obvious need of medical attention. Such gross departures from police practice standards can only be remedied by a denial of the Defendants Motion for Summary Judgment and any application of qualified immunity.

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment is based on the arguments made below, on the supporting documents filed herewith and all exhibits attached hereto, on the Court's file in this manner, and on such oral and/or documentary evidence presented at the hearing of this motion.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# STATEMENT OF FACTS

*Disturbance at Madison Square Apartments*

On October 27, 2018 at about 8:30 a.m., Defendants Wang and Lee responded to a call for service regarding an assault at Madison Square Apartments located at 2235 W. Broadway, in Anaheim, California. (PAMF 1). Upon their arrival at the apartment complex, Defendants Wang and Lee contacted apartment complex staff who alleged decedent had committed a misdemeanor battery by striking a maintenance worker in the forehead. (PAMF 2). After speaking with the apartment staff, Defendants Wang and Lee decided to investigate the matter further and contact decedent at apartment A-115. (PAMF 3).

Meanwhile, Decedent, Justin Perkins, suffered from mental illness including bipolar disorder. (PAMF 4). His capacity and mindset were similar to that of a twelve-year-old child. *Id*. Justin was diagnosed as bipolar when he was 18 years old. *Id*. In addition, Justin had a fear of police officers due to his prior knowledge of the Thomas Kelly case and his own prior interactions with police officers. (PAMF 5).

*Experience and Expertise Heading to Investigate*

All defendant officers, including Defendant Officers Wang and Lee, had training relating to conacts with mentally impaired persons in the field. (PAMF 6-12). Their training taught them to approach in a non-threatening manner when contacting a mentally impaired person in the field. *Id*. It taught them to allow time for the mentally impaired individual to assess and consider voluntary compliance. *Id*. They were trained to establish rapport with the menally impaired individual. *Id*.

Anaheim Police Department ("APD"), also trained all the defendant officers in defensive tactics including, the deployment of eclectronically

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

controlled devices, how and when to use a baton as an impact weapon, handcuffing and restraint techniques that avoid positional and/or restraint asphyxia, and when and how to utilize a potentially deadly chokehold, the carotid restraint. *Id*. Defendants Wang and Lee brought all this training with them to continue in their investigation of a potential misdemeanor committed out. (PAMF 13). However, they disregarded their training and well settled law and soon began a physical confrontation, dangerously escalating the encounter. *Id*.

*Knock, knock…*

After knocking on the door of apartment A-115 Defendants Wang and Lee contacted decedent, a White male in his mid-thirties with obvious and apparent mental disabilities. (PAMF 14). Thereafter Wang begins questioning decedent about a possible fight and decedent reveals that he was assaulted by the maintenance worker. (PAMF 15). As the defendant officers continued questioning decedent, they also learned that he was taking medications for anxiety and other behavioral disorders. (PAMF 16). The decedent was clearly confused by the questioning and told the defendant officers that he did not want to fight. (PAMF 17). Nonetheless, Wang and Lee insisted decedent come out of his apartment to allow them to question him more. *Id*. After some brief continued discussion and decedent attempting to end the conversation, decedent attempted to shut the front door of the apartment. (PAMF 18). However, Defendant Wang crossed the threshold of apartment A-115 without a warrant, held the apartment door ajar, and insisted that decedent step outside. (PAMF 19).  Both Defendants Wang and Lee were trained and understood the law does not allow them entry into a person's home without a warrant and exigent circumstances. (PAMF 20). More importantly, they both knew, or should have known that exigency did not exist in this circumstance. *Id*.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

*Put Up Your Dukes!*

After Defendants Wang and Lee ignored the law prohibiting them from forceful entry into decedent's home, ignored P.O.S.T. training guidelines requiring them to report the matter to a supervisor and/or obtain a warrant, and ignored the obvious need to accommodate decedent's recognizable disability, decedent exited the home and attempted to strike Defendant Wang with a fist. (PAMF 21). During the struggle, Defendants Wang and Lee, repeatedly and brutally struck Decedent about his head, face, and body with closed fists and batons. (PAMF 22). Decedent's uncle, Plaintiff David Michael Perkins, and observed Defendants Wang and Lee deliver a profound and significant beating to decedent (PAMF 23). Plaintiff David Michael Perkins stood within feet of the struggle and repeatedly shouted to Defendants Wang and Lee, informing them that decedent suffered from a mental disorder and had been previously diagnosed as bipolar and to stop beating decedent. (PAMF 24). After the Defendants started beating him, Mr. Perkins was not fighting back and was merely trying to cover his face from the Defendant Officer's blows. (PAMF 25). Nonetheless, both defendant officers continued their beating of decedent and depolying their TASERS on decedent multiple times in contrast to their training. (PAMF 26). Finally, Defendant Lee dropped his baton and began to choke Decedent with an unapproved chokehold while Wang continued to physically strike decedent about his head and body. (PAMF 27). During the attempted chokehold decedent bit and severed a digit of Defendant Lee's right pinky finger. (PAMF 28). Then, Defendant Lee let go of decedent and Defendant Wang got behind decedent and began to apply the carotid restraint. (PAMF 29). Wang then held the restraint until he heard decedent snoring. (PAMF 30). Shortly thereafter Defendant Lee called for paramedics to come to the scene. *Id*.

*No Rest for the Weary*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

After decedent fell unconscious due to the application of the carotid restraint, Wang and Lee sat decedent in a recovery position and relinquished custody to Defendants Edgar and Reynoso. (PAMF 31). Despite decedent's obvious need of medical attention, neither Defendant Edgar or Reynoso made a call to request paramedics for decedent. (PAMF 32). Defendants Wang, Lee, Edgar, and Reynoso knew, or at the very least should have known, that decedent suffered from mental illness because David Michael Perkins informed Defendants Wang, Lee, and Edgar that decedent suffered from mental illness, including bipolar. (PAMF 33). Defendants Edgar and Reynoso then stood decedent to his feet. (PAMF 34). However, decedent appeared visually dazed and unable to stand on his own power. *Id*. Defendants Edgar and Reynoso forced Decedent to walk with their assistance for a few feet before decedent collapsed. *Id*. After Decedent collapsed, Defendants Edgar, Reynoso, and Morrison proceeded to apply pressure to Decedent's back while was lying prone on the ground and laboring to breathe, obstructing his ability to breathe. (PAMF 35). Defendants Edgar, Reynoso, and Morrison then proceeded to apply a hobble restraint to decedent while it was evident that decedent was still laboring to breathe and in the midst of a medical emergency. (PAMF 36). Defendants Edgar and Reynoso failed to alert their supervisors or medical staff to the fact decedent was suffering a medical emergency because he had multiple applications of the carotid restraint and multiple applications of an electronic control device. *Id*. Defendant Edgar, Reynoso, and Morrison's conduct in applying pressure to decedent's back while he was lying prone on the ground and applying a hobble restraint while decedent was laboring to breathe, exacerbated the physical distress that led to decedent's death. (PAMF 37).

*Dead on Arrival*

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Dr. Benett Omalu, a renowed forensic pathologist, testified Justin's cause of death was asphyxia hypoxic brain injury due to restrain asphyxiation and the manner of death was homicide. (PAMF 38). He further testified, the initial asphyxiation event that started the chain reaction that culminated in Mr. Perkins death was when Justin was exposed to a TASER in the back by Defendant Wang. (PAMF 39). Thus, though Mr. Perkins did not actually expire during compression by the Defendant Officers, the asphyxiation continued and compounded until he eventually succumbed to the injuries caused by the Defendant Officers. *Id*. The multiple Taser applications, both in probe and drive-stun mode, by Defendant Wang were the initial asphyxia injuries that started the lethal chain of restraint asphyxia events that led to Mr. Perkins death. (PAMF 40). The next link in the chain was the multiple and severe blows that Defendants Lee and Wang delivered to Mr. Perkins' head, face, neck, and body with fists and police batons. (PAMF 41). The next link in the lethal chain of restraint asphyxia events was Defendant Lee and Wang's attempted and successful uses of the carotid restraint. (PAMF 42). The final link in the chain came when Defendants Edgar, Reynoso, and Morrison subjected Mr. Perkins to positional and mechanical pressure while he was handcuffed on the ground in a prone position. (PAMF 43).

Additionally, on June 9, 2020, Dr. Jonathan Birnbaum, M.D., the treating emergency room physician at West Anaheim Medical Center was deposed. Dr. Birnbaum testified that there was no indication from the Anaheim Police Department officer that accompanied Mr. Perkins' transport to the hosptial that a Carotid Restraint Control Hold was even attempted. Dr. Birmbaum further elaborated that such information is pertinent and necessary to the evaluation and treatment of a patient as such maneuvers can be cause for concern as it relates to blunt cerebrovascular injury, or "damage to the arteries that are in the brain."

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

## ARGUMENT

**A. Defendants Use of Force was Objectively Unreasonable Because Justin was not acting Violently Before the Unlawful Intrusion Into His Home or After he was Handcuffed**

The Supreme Court has established that an officer's use of force violates the Fourth Amendment if it is excessive under objective standards of reasonableness. *Scott v. Harris*, 550 U.S. 372, 382–83 (2007); *Acosta v. Hill*, 504 F.3d 1323, 1324 (9th Cir. 2007). When determining whether a particular use of force is "reasonable," courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the "countervailing governmental interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). The Ninth Circuit applies a three-step process to determine reasonableness in use of force cases. *Glenn v. Washington Cnty.*, 673 F.3d 864, 871 (9th Cir. 2011). First, the court must "assess the severity of the intrusion on the individual's Fourth Amendment rights by evaluating 'the type and amount of force inflicted.'" *Id.* (quoting *Espinosa v. City & Cnty. of S.F.*, 598 F.3d 528, 532 (9th Cir. 2010)). Even when an officer may have been justified in using some force, "the amount [of force] actually used may be excessive." *Id.* (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)).

Second, the court must evaluate the government's interest in the use of force under the totality of the circumstances. *Glenn, supra*, 673 F.3d at 871 (citing *Graham*, 490 U.S. at 396). In *Graham*, the Supreme Court noted that courts should consider such factors as (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The most important of these factors is whether the suspect posed an immediate threat to the officer's safety

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

or the safety of others. *Smith v. City of Hemet*, 394 F.3d 689, 702 (9th Cir. 2005) (en banc). In addition to the *Graham* factors, the Ninth Circuit has considered the availability of alternative methods of responding to the situation and whether warnings were given prior to the use of force. *Smith*, 394 F.3d at 701; *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001).

The Ninth Circuit has further explained, "[c]ases in which the victim of alleged excessive force has died 'pose a particularly difficult problem' in assessing whether the police acted reasonably, because 'the witness most likely to contradict [the officers'] story ... is unable to testify.'" *Gregory v. Cnty. of Maui*, 523 F.3d 1103, 1107 (9th Cir. 2008) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994)). Thus, the court must assess the evidence to determine the credibility of the officers' account of the events. *Gregory*, 523 F.3d at 1107. And, following from these precepts, courts "have denied summary judgment to defendant police officers in cases where 'a jury might find the officers' testimony that they were restrained in their use of force not credible, and draw the inference from the medical and other circumstantial evidence that the plaintiff's injuries were inflicted on him by the officers' use of excessive force.'" *Gregory*, at 1107 (quoting *Santos v. Gates*, 287 F.3d 846, 852 (9th Cir.2002)).

Here, Defendants rely on the interpretations of the evidence that favor their theory of the case in asserting that they are entitled to summary judgment. Plaintiff maintains that nearly every material fact that Defendants rely on is disputed and thereby does not support their motion. Before this Court can decide whether the force used by the defendant officers was appropriate, the following genuine issues of material fact need to be decided: (1) whether Justin was actively resisting the Defendant officers after he was handcuffed; (2) whether Justin was moving his arms and legs in an act of resistance when he was being pulled to the ground by the Defendant officers; (3) whether any Defendant

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

began to strike Justin about his head at any time during the attempted arrest; (4) whether Justin was trying to protect himself when Defendant Wang held his front door open; (5) whether Justin posed an immediate threat to the defendant officers once he was pulled to the ground and held in a compromising position; (6) whether Justin was actively resisting or trying to protect himself when Defendant Wang deployed the TASER in drive-stun mode on Justin's back; (7) whether any Defendant struck Justin more than once about Justin's face and head; (8) whether Defendant Wang crossed over the threshold into Justin's home when he held Justin's front door open; (9) whether Defendant Reynoso used his body weight to pin Justin to the ground; (10) whether Justin was positioned face down flat on his stomach for most of the altercation with defendants; (11) whether Defendant Edgar put pressure on Justin's back while he lay face down flat on his stomach; (12) whether Defendant Morrison put pressure on Justin's back as he lay face down flat on his stomach; (13) whether Justin was experiencing a medical emergency whiled pressure was being applied to his back; (14) whether Defendant Wang called for medical attention for Justin after the struggle; (15) whether Defendant Lee called for medical attention for Justin after the struggle; (16) whether Defendant Reynoso called for medical attention for Justin after the struggle; (17) whether Defendant Edgar called for medical attention for Justin after the struggle with Wang and Lee; (18) whether defendant officers promptly summoned and allowed medical care be provided to Deautry; (19) whether defendant Wang held Justin in a carotid restraint for forty-five (45) seconds; (20) whether Justin ever tried to surrender during the struggle with Wang and Lee; and (21) whether baton strikes to Justin's head and body came at a time when Justin was trying to surrender. Due to these genuine disputes of material facts, summary judgment must be denied.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Even assuming, arguendo, that this Court reaches the "use of force" analysis under *Graham*, the facts viewed in a light most favorable to the Plaintiffs favors denial of summary judgment. More specifically, before the physical struggle, during the physical struggle, and after the handcuffing of Decedent, Defendants disregarded constitutional protections of well settled law, utilized force beyond that reasonably necessary to subdue Justin, made poor tactical decisions in investigating an alleged misdemeanor, and failed to summon obviously needed medical attention that eventually lead to needless injury and death.

Both Defendants Wang and Lee admit they lacked probable cause to arrest Decedent for the alleged assault on Sanchez while they spoke with Justin at his front door. In fact, Defendants Wang and Lee were unsure of whether the instant giving rise to their investigation came as the result of mutual combat or a unilateral assault as indicated by Sanchez. Even if Sanchez's allegations were true, at best, the incident did not amount to more than a misdemeanor committed outside of Wang and Lee's presence. More simply put, there was no serious crime at issue. Justin was not a flight risk and was being very cooperative until Defendant Wang forced himself into Justin's home. He answered their questions and presented his identification when it was requested. There was no danger to either Wang or Lee while they were asking questions. Justin even asked, "Please don't", objecting to Defendant Wang's entry into his home. Defendants Wang and Lee knew they were not supposed to cross the threshold of Justin's front door without probable cause or exigent circumstances, but Wang took it upon himself and did it anyway contrary to department policy, training, and the best practices in the industry setting in motion a violent confrontation.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

More importantly, any reasonable officer should have realized they were speaking to an individual with mental deficiencies. Although, he was an adult male, Justin presented as a twelve year old boy. The questioning about a fight was clearly confusing Justin and making him nervous. He did not appear to understand the questions Wang and Lee were asking him about a fight, even responding to them, "I don't want to fight" while cowering in fear behind the door as the questions became a little more focused. In addition, Justin clearly indicated he was taking "Depakote", a medication proscribed to treat manic episodes. Wang and Lee reasonably should have recognized the tell-tale signs of mental disability and operated according to their training. They were trained not to present themselves as a threat or threaten the subject with arrest. They were trained to give the subject time to consider the circumstances. They were trained how to establish rapport to help avoid triggering a mentally impaired individual and escalating a matter into a violent conflict. However, they disregarded their training and the best practices of the industry and forced their way into the home, triggering a violent response from Justin, a scared mentally impaired man with the mental capacity of a twelve year old.

After the initial lunging at Defendant Wang, and Lee's depolyment of his TASER device, Uncle Mike testified he observed Justin beginning to cower against a wall in the narrow hallway leading to their apartment door trying to protect himself from the now more aggressive officers. Surely, a reasonable jury would understand there is no need to continue to beat someone once surrender is apparent. There can be no reasonable doubt Justin threw the first punch, but after a TASER was discharged and a failed choke attempt by Defendant Officer Lee, Justin seemed to act only in a defensive manner. His steps were woblly and off balanced. He did not attempt to strike anyone else. At worst, he held Defendant Officer Lee so as to prevent Lee from either choking him or striking

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

him any further. Meanwhile, Defendant Wang discharged his TASER device twice, struck Justin multiple times with a baton, and utilized a carotid restraint hold for over a minute after Justin had fallen to the ground, dazed from the struggle and combat.

Even further, after Justin was handcuffed and sat in an upright position, any danger that previously existed was clearly over. Defendants attempt to characterize Justin as fully lucid and still offering vigorous resistance to the officers, but the body camera recordings of Defendant Officers Reynoso, Edgar, and Morrison certainly offer a different perspective than the Defendants' interpretation of the happenings. Moreover, the Ninth Circuit has previously advised "in the deadly force context, we cannot 'simply accdept what may be a self-serving account by the police officer.'" *Cruz v. City of Anaheim*, 765 F.3d 1076, 1079 (9th Cir. 2014) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)). The body worn camera(s) ("BWC") clearly show Justin was struggling to breathe, exhibiting ocular fixation, drooling, and very much non-verbal before Defendants Reynoso and Edgar began to hold him in custody. In fact, they ask him thriteen (13) times what his name is, but Justin is unable to respond. They ask him about his physical orientation seven (7) times, and Justin is unable to respond. Finally, after at least a minute of asking questions, Defendants Reynoso and Edgar ask Justin if he can get up to walk to the paramedics to receive medical treatment. Justin's faint "Yeah" should be interpreted as his acknowledgment and notice of his need for medical treatment. Yet, Defendants Edgar and Reynoso force him to walk, put Justin on the ground in a prone position, and hog-tied him while Justin was experiencing an obvious medical emergency. Edgar even went far enough to tell a complete falsehood, asserting Justin was trying to take his and Defendant Reynoso's guns, to justify the unreasonable force to hold Justin in a prone position and hog-tie him.

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

1    Finally, excessive force inquiries require balancing of the amount of force

2    applied against the need for that force under the circumstances. *Meredith v.*

3    *Erath*, 342 F.3d 1057, 1061 (9th Cir. 2003). "Because such balancing nearly

4    always requires a jury to sift through disputed factual contentions, and to draw

5    inferences therefrom ... summary judgment or judgment as a matter of law ...

6    should be granted sparingly" in cases involving claims of excessive force.

7    *Gregory*, 523 F.3d at 1106 (quoting *Drummond ex rel. Drummond v. City of*

8    *Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003)).

9        A reasonable fact-finder could conclude that the officers' use of body

10   compression as a means of restraint was unreasonable and unjustified by any

11   threat of harm or escape when Justin was handcuffed, in a prone position, and

12   surrounded by numerous officers. See, *Drummond*, 343 F.3d at 1056

13   (concluding that "the force allegedly employed was severe and, under the

14   circumstances, capable of causing death or serious injury" where defendant

15   officers allegedly "continued to press their weight on [plaintiff's] neck and torso

16   as he lay handcuffed on the ground and begged for air"); see also, *Abston v. City*

17   *of Merced,* 506 Fed.Appx. 650, 652-653 (9th Cir. 2013) (upholding same); see

18   also *Zelaya v. Las Vegas Metropolitan Police Department*, 682 Fed.Appx. 565

19   (9th Cir. 2017) (holding that pinning a subject to the ground after handcuffing

20   violates the 4th Amendment); see also *Slater v Deasey,* 789 F. App'x 17, 19 (9th

21   Cir. 2019).

22       Furthermore, like in *Abston*, there is a genuine issue of material fact as to

23   whether Justin was resisting during the time that he was shackled and if so,

24   whether that resistance was anything more than minimal. It cannot reasonably be

25   disputed that any of Jusitn's lack of communication after he was handcuffed

26   amounted to much more than either absolute compliance and surrender or an

27   alert to the need for prompt medical attention. In *Abston* the court reasoned that

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

if a jury could answer either question in the negative, then the conduct would fall under the clearly established law in *Drummond*, thus qualified immunity should not be granted and summary judgement for defendants should be denied as to the compression restraint that came as a result of hog-tieing Justin and ignoring the obvious signs of a medical emergency.

Although TASER deployments are not generally considered lethal applications of force, they have long since been considered to be significant levels of intermediate force capable of causing extreme pain and should not be used against a non-combative suspect. *Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011); see also, *Bonivert v. City of Clarkson*, 883 F.3d 865 (9th Cir. 2018); see also, *Jones v. Las Vegas Metropolitan Police Department*, 873 F.3d 1123, (9th Cir. 2017) (holding justification for use of an intermediate level of force waned by the time suspect was prone surrounded by officers). Similarly, in the present matter, was not attempting to strike either of the officers any longer at the time. A reasonable jury could find a substantial likelihood of serious bodily injury from TASER deployments when another officer is delivering consecutive baton strikes to Justin's head and body.

In addition, the Ninth Circuit has consistently held that using the carotid restraint on a person who is not resisting officers violates the Fourth Amendment. (*Tuuamalemalo v. Greene*, 946 F.3d 471, 477 (9th Cir. 2019) (citing Barnard v. Theobald, 721 F.3d 1069 (9th Cir. 2013) (citing Drummond ex rel. Drummond v. City of Anaheim, 343 F.3d 1052, 1059 (9th Cir. 2003); *Nava v. City of Dublin*, 121 F.3d 453, 458 (9th Cir. 1997) (citing *Ayala v. City of South San Francisco*, 2007 WL 2070236) (upholding the Northern District of California Court's finding that California Highway Patrol's application of the carotid hold constitutes deadly force).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

In *Tuuamalemalo v. Greene*, 946 F.3d 471 (9th Cir. 2019), the Ninth Circuit emphasized that "it [is] clearly established that the use of a chokehold on a non-resisting, restrained person violates the Fourth Amendment's prohibition on the use of excessive force. *Tuuamalemalo*, 946 F.3d at 477. In fact, the Ninth Circuit has identified that there is a "robust consensus" throughout the United States Circuit Courts that "use of a chokehold on a non-resisting person violates the Fourth Amendment." (citing *Coley v. Lucas Cty.*, 799 F.3d 530, 541 (6th Cir. 2015) (holding "chokeholds are objectively unreasonable where… there is no danger to others"); *Valencia v. Wiggins*, 981 F.2d 1440, 1447 (5th Cir. 1993) (holding use of a "chokehold and other force… to subdue a non-resisting [detainee] and render him temporarily unconscious was unreasonable and was an excessive use of force"). As such, the Ninth Circuit held that the "[officer] violated clearly established Fourth Amendment law when he placed Tuuamalemalo in a chokehold and rendered him unconscious." *Id.* at 477. Thus, the Ninth Circuit has consistently upheld that use of a chokehold against a non-resisting person violates a person's right to be free from excessive force is clearly established. *Id.* at 478.

In *Ayala v. City of South San Francisco*, 2007 WL 2070236, the Court looked at *Graham* factors, considering whether the suspect posed an immediate threat to officer or others. *Ayala v. City of South San Francisco*, 2007 WL 2070236, at 7*. When the carotid was applied in these circumstances, a total of thirteen officers were on scene and Ayala's hands were cuffed in front of him with ankles bound by the TARP straps. *Id.* The Court found that a reasonable jury could conclude that the officers had Ayala largely under control and that Ayala did not pose an immediate danger to the officers and the public. *Id.*

In this case, Justin had fallen to the ground, and was not combative any longer when Defendant Wang utilized a carotid restraint for over sixty (60)

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

seconds. Defendant Wang's statement to homicide investigators is incredibly revealing. In his statement he describes placing Justin in the carotid restraint after Justin fell to the ground. He then goes on to say he held that carotid restraint until he heard Justin snoring. As such, the level of force utilized in Justin's arrest was overly intrusive given the circumstances of his ended attack. Summary judgment should be denied.

**B.  Defendants' Improperly Denied Medical Care to Justin During the Final Critical Moments of His Life**

The agency responsible for an injury while being apprehended by police has an obligation to provide medical care to persons. It is the duty of a governmental entity to "ensure that the medical care needed is in fact provided." *City of Revere v. Massachusetts General Hosp.*, 463 U.S. 239, 244-45 (1983).

In the present matter, the Defendant officers never called emergency medical responders for Justin, and consequently denied medical care to Justin in the critical last moments of his life. First, the Defendant officers failed to summon medical care for Justin who was in obvious need of medical care. The first medics that arrived on the scene attended to Defendant Officers Lee and Wang. In fact, Defendants Edgar and Reynoso watched as paramedics walked right past them and Justin who had obviously exhibited several signs indicating a medical emergency just minutes beforehand. Second, the defendant officers hogtied Justin while he was not moving and turning blue. They only summoned the medics to provide medical care after it was too late. The Defendant officers sat by idly while Justin was clearly observed gasping for his last breaths of air while hogtied in a prone position. Then after Justin took his last breath, the Defendant officers finally allowed Deautry to be provided with medical care.

These failures demonstrate that, not only did the officers fail to ensure that the medical care Justin needed was in fact provided to him, but that officers

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

deliberately denied Justin the lifesaving measures to which he was constitutionally entitled, and with which defendant officers had a duty to provide. Therefore, Plaintiffs' second claim under 42 U.S.C. § 1983 for denial of medical care should be upheld.

### C. The Court Should Deny Defendants' Claim for summary Judgment of Plaintiffs' Claim for Violation of Substantive Due Process

Plaintiffs' substantive due process claim must survive summary judgment because defendant officers' conduct is shocking to the conscience. After Justin ended his aggression towards Defendant officers Wang and Lee for barging into his home the Defendant officers continued to restrain him by forcing him to lay in a compromising position and hog-tieing him. Then, after Justin was handcuffed, hog-tied, non-responsive, and turning blue the Defendant officers finally called for the medical attention that may have very well saved Justin's life had it been summoned earlier. It is incredibly shocking to view the BWC of Justin stumbling through the hallway and falling to the ground dazed and confused while Defendant Wang then decides to utilize the carotid restraint hold on Justin. It is equally as shocking to watch Justin drooling and unable to speak or orient himself physically while Defendant Officers Edgar and Reynoso chuckle and cajole each other into concocting a story about Justin trying to take their weapons while he was obviously suffering from a medical emergency. Justin was obviously put through a great deal of torment and suffering. Summary judgment should be denied as to this claim.

Furthermore, the Defendant officers admitted they were familiar with positional asphyxia and were generally concerned when they heard Justin had been subjected to the carotid restraint. Yet the BWCs suggest the Defendants held Justin down in a prone position for over two minutes, placed him in a hobble restraint, and finally hog-tied him. Two medical personnel walked right

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

past Justin as he lay in anguish, but Defendants did not alert the medics to Justin's need of medical attention. Neither Justin's obvious labored last gasps for air, nor his attempts to move from a compromising prone position were enough to garner an immediate request for medical attention. Instead, defendant officers forced him to lay prone prone, hand-cuffed, and hog-tied like some kind of tasteless trophy. The officers knew Justin was injured and in need of medical attention. They just did not care.

More importantly, the only purpose of making Justin lay in a very vulnerable prone position was to harm or punish. A reasonable jury could certainly find the Defendants' actions were meant to harm Justin. Furthermore, the only purpose to hog-tie a subject who is drooling, unable to speak or coordinate the movement of his body, experiencing an obvious medical emergency, and is not actively trying to kick or hit the Defendants, is to harm and punish. This is the behavior that the Defendant officers exhibited in the instant circumstance. For these reasons summary judgment should be denied on these grounds.

### D. State Claims Must Survive

The California Supreme Court has recently decided *Hayes v. County of San Diego*, 57 Cal.4th 622 (2013) and clarified that "state negligence law...is *broader* than federal Fourth Amendment law" and that "[l]aw enforcement personnel's tactical conduct and decisions preceding the use of deadly force are relevant considerations under California law in determining whether the use of deadly force gives rise to negligence liability." *Han v. City of Folsom*, --Fed.Appx.--, 2014 WL 59731, *2 (9th Cir. 2014) (overturning summary judgment on Plaintiffs' negligence claims in which trial court determined because officer's conduct did not amount to constitutional violation it necessarily did not amount to a violation of state law claims). Here again,

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

questions of material fact preclude determination of whether the defendant
officers violated Plaintiffs' state law causes of action as well.

As discussed above, Defendants' conduct violated Justin's constitutional
rights underneath the 4th Amendment. A reasonable jury could find that
Defendants knew, or should have known, that violating Justin's rights in such a
manner would be likely to cause severe emotional distress. Plaintiff Teresa
Perkins lost her son due to the excessive force and reckless behavior of the
Defendant officers. A reasonable jury could find that Defendant officers
battered/assaulted Deautry, given Justin was not attacking the defendant
officers, and only attempted to protect himself from officers choking him,
numerous strikes to his side and head, three (3) applications of a TASER, being
pinned down in a prone position making it difficult for him to breathe, and then
was forced wait for medical attention while he lay hog-tied gasping for his last
bit of air. At the very least, a jury could find the Defendants' conduct negligent.
At the worst, a jury could find the defendant officers intentionally sought to
cause Justin pain and distress. These are clearly questions of fact for a jury to
determine, and thus, summary judgment should be denied as to Plaintiffs' state
law claims of battery and wrongful death.

Moreover, Plaintiff Teresa Perkin's negligence claim must survive.
Defendants Wang and Lee had no reasonable basis to force entry into Justin's
home. A reasonable jury could find the defendants were unreasonable in their
tactical approach to investigating an alleged misdemeanor assault. Defendants
Wang and Lee knew they could not arrest nor force Justin to speak with them or
come outside without a warrant or exigent circumstances, neither of which
existed in this circumstance. In addition, Defendants Edgar and Reynoso, should
have been able to ascertain Justin's desperate need for medical attention because
he could not talk, coordinate his movements, and was drooling. All are signs

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

they are trained to recognize as indication of need for medical attention. Yet, they all ignored their training and continued to brutalize a scared individual whom they should have known was mentally impaired.

### E. Plaintff's Claim Under Section 52.1 Must Survive Summary Judgment

The Bane Act (*Cal. Civ. Code*, § 52.1) authorizes a civil action "against anyone who interferes, or tries to do so, by threats, intimidation, or coercion, with an individual's exercise or enjoyment of rights secured by federal or state law." (*Jones v. Kmart Corp.*, (1998) 17 Cal.4th 329, 331. *See also Venegas v. County of Los Angeles*, (2004) 32 Cal.4th 820, 843 (holding generally that Bane Act liability extends only to rights violations accompanied by "threats, intimidation, or coercion").) "[A] successful claim for excessive force under the Fourth Amendment provides the basis for a successful claim under § 52.1." (S*ee Chaudhry v. City of Los Angeles* (9th Cir. 2014) 751 F.3d 1096, 1105–06 (citing *Cameron v. Craig,* 713 F.3d 1012, 1022 (9th Cir. 2013)); s*ee also Cornell v. City and Cnty. of San Francisco,* 17 Cal. App. 5th 766 (Ct. App. 2017). As discussed *supra*, Plaintiff has identified numerous factual disputes bearing on the reasonableness of Defendants' use of force. Moreover, the coercion and intimidation is present because Defendant officer Wang demanded Justin to keep his door open even after Justin wanted to end the conversation with law enforcement and unlawfully entered Justin's home. Accordingly, Defendants' motion must fail on this point as well.

### F. Defendants are not Entitled to Qualified Immunity

In evaluating a Section 1983 claim against an officer, the Ninth Circuit follows a two-part analysis. The "threshold question" is whether, as discussed above, the facts alleged show the officers' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (abrogated in part on other

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

grounds by *Pearson v. Callahan*, 555 U.S. 223, (2009)). If the Constitution was not violated, that is the end of the inquiry. If there was a violation, however, the Court is to proceed to the question of qualified immunity. Officers are protected by qualified immunity, which is "an immunity from suit rather than a mere defense to liability," *Pearson*, 129 S.Ct. at 815. When an officer asserts immunity, the court dismisses the case unless the officer knew that his conduct was "clearly unlawful," that is, unless the officer understood or should have understood that his actions violated a clearly established right. *Saucier*, 533 U.S. at 202. Having addressed the constitutionality of the Defendant officers actions *supra* there is no need to rehash everything here.

It has long been established that death by restraint or positional asphyxiation is a very real (and avoidable) consequence of force used by police officers. The Ninth Circuit has decided a litany of similar cases that put reasonable police officers on notice that keeping an individual restrained with his chest to the ground while applying pressure to his back and ignoring pleas that he cannot breathe—constituted excessive force under the Fourth Amendment. See *Drummond*, 343 F.3d at 1056–57; see also, *Arce v. Blackwell*, 294 Fed. Appx. 259, 261-262 (9th Cir. 2008); see also; see also, *Abston v. City of Merced,* 506 Fed.Appx. 650, 652-653 (9th Cir. 2013). *Drummond* is well-settled law, and a reasonable officer should have known that such conduct was unlawful. At the very least, questions of fact preclude summary judgment on this point, because Defendants assert that Justin was resisting them; whereas, Plaintiff maintains that Justin gave up fighting once Defendants Wang and Lee began attempting to apply the carotid restraint hold. Plaintiff also argues Justin's movement of his legs is more consistent with the natural reactions to being smothered to death and fighting for oxygen. The several cases cited above in the discussion of the *Graham* factors demonstrate 9th Circuit decisions related to

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

uses of excessive force in like situations. Plaintiff Teresa Perkins submits that the above cases are sufficient to put Defendant officers on notice that their conduct and use of force was unreasonable under the circumstances and would violate the constitution. In either event, a finder of fact will have to make the determination. Defendants' point on this issue must fail.

Finally, Plaintiff submits the above cases (*Mattos v. Agarano*, *Jones v. Las Vegas Metropolitan Police Department*, and *Bonivert v. City of Clarkson*) are sufficient to put Defendant McGee on notice that his conduct and use of a TASER on a prone suspect who, multiple times immediately prior, had demonstrated a willingness to surrender was unreasonable under the circumstances and would violate the constitution.

Even if the above cases in the *Graham* analysis were not sufficient, state officials are not entitled to qualified immunity simply because no case with materially similar facts has held their conduct unconstitutional.  (*See Hope v. Pelzer* (2002) 536 U.S. 730, 739-41; see also *Deorle v. Rutherford* (2001) 272 F. 3d 1272, 1286 ("When the defendant's conduct is so patently violative of the constitutional right that reasonable officials would know without guidance from the courts that the action was unconstitutional, closely analogous pre-existing case law is not required to show that the law is clearly established.").) Additionally, all Defendant officers were trained that officers cannot use the requirement of gaining control as a pretext to use excessive force. (*See Drummond v. City of Anaheim* (9th Cir.2003) 343 F.3d 1052, 1061-1062 (holding that an officer's training from their own police department alerting officers to the risk of serious injury or death with regards to a specific type of force used under certain circumstances is "fair warning" that the force is unreasonable under those circumstances).) Any reasonable officer should know they are not allowed to apply a carotid restraint to someone who is no longer

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

combative. Moreover, Defendants did not even present any argument about qualified immunity applying to Defendant Lee's use of his TASER on Justin. Accordingly, Defendants request for qualified immunity must fail on this point as well.

### G. Punitive Damages

Perhaps the clearest evidence of malice, beyond the excessive nature of the striking, multiple applications of a carotid restraint, and applications of a TASER, and the smothering of Justin by several officers, is the manner in which the Defendants forced Justin to lay while waiting for medical attention. The refusal of medical attention by the Defendants while Justin was clearly in peril demonstrates the utter contempt they had for Justin. Their actions can best be described as hateful. This is certainly not the conduct of heroes that is utilized when someone is conducting themselves in an unbiased professional manner. This is the behavior exhibited by one who intended to cause harm. This is the behavior exhibited by a Defendant who showed disregard for tact and professionalism and acted like a hateful vigilante. This is the kind of behavior of someone who did not care whether Justin lived or died. Summary judgment should be denied.

### CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion for summary judgment in its entirety.

Dated:  January 29, 2021          **THE LAW OFFICES OF JOHN L. BURRIS**

_____/s/ *DeWitt M. Lacy*_____
DeWitt M. Lacy
Attorney(s) for Plaintiff

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**