**THE LAW OFFICES OF JOHN L. BURRIS**
JOHN L. BURRIS, Esq. (SBN 69888)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile:  (510) 839-3882
john.burris@johnburrislaw.com

**THE LAW OFFICES OF JOHN L. BURRIS**
DeWITT M. LACY, Esq. (SBN 258789)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile:  (510) 839-3882
dewitt.lacy@johnburrislaw.com

Attorneys for Plaintiff(s)
Teresa Perkins

# UNITED STATE DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA PERKINS, as Successor-in-Interest to Decedent Justin Perkins; and DAVID MICHAEL PERKINS<br><br>            Plaintiff,<br><br>   vs.<br><br>CITY OF ANAHEIM, a municipal corporation; SHIAO WANG, individually and in his capacity as a police officer for the CITY OF ANAHEIM; KENNY LEE, individually and in his capacity as a police officer for the CITY OF ANAHEIM; KENNETH EDGAR, individually and in his capacity as a police officer for the CITY OF ANAHEIM; RICKY REYNOSO, individually and in his capacity as a police officer for the CITY OF ANAHEIM; CASEY MORRISON, | Case No.: 8:19-cv-00315-JLS-JDE<br><br>*(Hon. Josephine L. Staton)*<br><br>**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>Date:          January 20, 2021<br>Ctrm.:        10A<br>Action Filed:  2/16/2019<br>Pretrial Conf.: 1/8/2021 |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

individually and in his capacity as a police officer for the CITY OF ANAHEIM; and DOES 1-50, inclusive, individually and in their official capacities as Police Officers for the CITY OF ANAHEIM Police Department

Defendants.

## I.     PLAINTIFF'S CONTROVERTED FACTS

| DEFENDANTS' PROPOSED FACT | DEFENDANTS' PROPOSED SUPPORTING EVIDENCE | PLAINTIFFS' OBJECTIONS AND RESPONSES |
|---|---|---|
| 1.  On the morning of Saturday, October 27, 2018, Anaheim Police Department ("APD") Officers Shiao Wang and Kenny Lee responded to a call for service at 2235 West Broadway in Anaheim. | 1.  Declaration of Shiao Wang ("Wang Decl."), ¶ 3; Declaration of Kenny Lee ("Lee Decl."), ¶ 3. | 1. Undisputed. |
| 2.  Officers Wang and Lee were advised that the call concerned a report that a resident of the apartment | 2.  Wang Decl., ¶ 3; Lee Decl., ¶ 3. | 2. Disputed in part. When Defendants Wang and Lee were advised of the call, the only |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| complex had punched a maintenance worker in the face, that the suspect lived in unit A115, was a white male with the last name Perkins, and was possibly on methamphetamine. | | information they received was that a maintenance worker had been punched and the person who allegedly assaulted the maintenance worker was a tenant. There was no mention of an apartment number, a name, nor any potential intoxication. Wang Depo. at 40:11-40:19 (Lacy Decl. Ex 1) Lee Depo. at 38:21-39:8 (Lacy Decl. Ex 2) |
| 3.  Officers Wang and Lee arrived at the apartment complex office and contacted both the apartment manager who had called the police and the assault victim, maintenance worker Nestor Sanchez ("Sanchez"). | 3.  Wang Decl., ¶ 4; Lee Decl., ¶ 4. | 3.  <u>Disputed in part.</u> When Defendants Wang and Lee spoke with Sanchez they did not yet know if Sanchez was a victim of an assault or battery as the investigation was ongoing. Moreover, after Mr. Perkins reported that he had been assaulted |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Defendants Wang and Lee were unsure if Sanchez was a victim or a suspect. Wang Depo. at 44:13-20; 45:23-47:7, 48:22-49:10. Lee Depo. at 48:17-24. |
| 4.  Sanchez reported to the officers that a tenant, later identified as decedent Justin Perkins ("Perkins"), had walked past him and suddenly punched him in the head. Sanchez described the attack as completely unprovoked and told the officers that he believed Perkins was possibly on drugs. Sanchez provided a description of the person, and said he wanted him arrested | 4.  Wang Decl., ¶¶ 6-7; Lee Decl., ¶ 6; Exh. 3, 00:45 - 01:53, 03:58 - 04:03. | 4.  <u>Undisputed.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| for assault. | | |
| 5.   The apartment complex manager advised the officers that the person described by Sanchez was the son of a resident, and was residing with family members Lance Perkins and David Michael Perkins in apartment A115. | 5.   Wang Decl., ¶ 7; Lee Decl., ¶ 6; Exh. 3, 05:28 - 06:48. | 5.   <u>Undisputed.</u> |
| 6.   Officers Wang and Lee proceeded to apartment A115 to conduct an assault and battery investigation, and a person who generally matched the physical description of the alleged assailant opened the door. | 6.   Wang Decl., ¶ 8; Exh. 1, 00:30 - 01:55; Lee Decl., ¶ 7; Exh. 4, 01:28. | 6.   <u>Undisputed.</u> |
| 7.   Perkins immediately began making | 7.   Wang Decl., ¶ 9; Exh. 1, 01:56 - 04:05; | 7.   <u>Disputed in part.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| statements about "a guy" who he said had pushed and gotten angry at him. He provided his ID to Officer Wang, confirming that he was in fact Perkins. Perkins appeared nervous and agitated, and Officer Wang questioned him about any medications he was taking and his relationship to the persons renting that apartment. | Lee Decl., ¶ 7; Exh. 4, 01:51 - 02:14. | When Defendants Wang and Lee first contacted Mr. Perkins he displayed obvious and apparent mental disabilities and was having a hard time communicating clearly with the Defendants. APD policy states that a 5150 commitment should be considered over an arrest when mental health issues appear to be a mitigating factor for people suspected of committing crimes. APD Policy also dictates that APD will provide POST-approved officer trainings on interacting with persons with mental disabilities. All of the Defendant Officers have received such training. Tactics for contacting individuals with mental |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

impairment include calm communication and letting the person know that you are not a threat. Officers are not supposed to pull out weapons, grab the subject, or use force unless absolutely necessary. Defendants Wang and Lee, in contravention of their training, did not use de-escalation tactics and immediately resorted to using force after illegally entering Mr. Perkins home.

Wang BWC at 2:01-2:15. (Lacy Decl. Ex 3)

Lee BWC at 1:59 – 2:07. (Lacy Decl. Ex 4)

Wang Depo. at 50:23-51:21.

Lee Depo. at 31:16-32:9, 33:2-21.

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Reynoso Depo. at 44:20-46:6, 46:7-48:4, 48:5-17, 49:12-50:6. (Lacy Decl. Ex 5).

APD Policy 418 Mental Illness Commitments (Lacy Decl. Ex 6)

Mr. Perkins never said that he had pushed anyone. Mr. Perkins actually said "he [the guy] pushed me."

Wang Depo. at 45:23-47:7, 49:11-50:22.

Wang BWC at 2:01-2:15.

Lee BWC at 1:59 – 2:07.

Prior to Defendant Wang prohibiting Mr. Perkins from closing his front door, Mr. Perkins did not act violently, speak in a disrespectful manner, raise his voice, or threaten the Defendants. In neither

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Defendant Lee nor Wang's depositions did they describe Mr. Perkins as nervous or agitated. Mr. Perkins consented when the Defendants asked for his identification, verbally responded to Defendants Lee and Wang's questions, and attempting to answer their questions, though some of his answers were deemed unsatisfactory by Defendants Lee and Wang.

Lee Depo. at 44:11-17.

Lee BWC at 1:53 – 4:12.

Wang Depo. at 54:15-55:25.

Wang BWC at 1:55 – 4:14.

Mr. Perkins correctly reported to Defendants

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Lee and Wang that he was taking Depakote for mood stabilization and Zyprexa. Further putting Defendants Wang and Lee on notice that Mr. Perkins suffered from mental illness. <br><br> Wang Depo. at 49:11 – 50:22. <br><br> Wang BWC at 2:40 – 2:50. <br><br> Teresa Perkins Depo. at 54:16-55:5. (Lacy Decl. Ex 7) |
| 8.  After Perkins nervously moved his hands around his pockets, Officer Wang asked him if he had any weapons on him and he said "no" and "please don't," and began closing the door. | 8.  Wang Decl., ¶ 10; Exh. 1, 04:06 - 04:15; Lee Decl., ¶ 8; Exh. 4, 04:10 - 04:12. | 8.  <u>Disputed in Part.</u> Both of Mr. Perkins' hands were visible throughout the encounter. <br><br> Mr. Perkins put his left hand into his pocket for approximately two seconds, but promptly removed it, causing both |

Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

hands to once again be visible to Defendants Wang and Lee. Mr. Perkins did not move his hand around during the two seconds it was in his pocket.

Wang Depo. at 79:21-81:6.

Wang BWC at 1:58 – 4:01.

Lee BWC at 1:55 – 4:12.

Due to prior experiences with police officers, specific knowledge of the Thomas Kelly case, and his mental illness, Mr. Perkins became understandable afraid when Defendant Wang entered his home and illegally prevented him from returning to the sanctuary of his home.

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | Teresa Perkins Depo. at 116:18-118:1. |
|---|---|---|
| 9. Officer Wang then extended his left hand and foot to prevent the door from closing, and Officer Lee asked Perkins to call his dad, who the officers believed at that time to be in the apartment with Perkins. | 9. Wang Decl., ¶ 10; Exh. 1, 04:16 - 04:20; Lee Decl., ¶ 8; Exh. 4, 04:13. | 9. <u>Disputed in Part.</u> As Mr. Perkins attempted to close the front door of his home, Defendant Wang extended his left hand and foot over the threshold of Mr. Perkins home without a warrant to prevent Mr. Perkins from the ending the encounter. Crossing the threshold of the home is barred under the 4th Amendment with sufficient cause or exigent circumstance. Mr. Perkins was under no obligation to continue speaking with Defendants Wang and Lee. Defendants Wang and Lee lacked sufficient probable cause to arrest Mr. Perkins at that time |

Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL
MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | and no exigent circumstances existed at the time that justified the Defendant Officer's warrantless entry to Mr. Perkins' home. Defendant's Lee and Wang were trained on the 4th Amendment in the academy and at Anaheim Police Department. Lee Depo. at 45:20-25; 46:11-47:6; 47:7-24; 48:14-49:2. Lee BWC at 4:13. Wang Depo. at 56:25-58:2; 58:3-58:18; 58:19-59:14. Wang BWC at 4:16-4:20. |
| 10. Perkins then began making excited remarks about "those guys" and fighting. Officer Wang then asked him about his | 10. Wang Decl., ¶ 10; Exh. 1, 04:21 - 05:03; Lee Decl., ¶ 8. | 10. <u>Disputed in Part.</u> Despite Mr. Perkins attempt to end the encounter with Defendants Wang and |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| medications, and whether he was on meth or taking illegal drugs. Perkins said no. | | Lee, Defendant Wang continued to ask Mr. Perkins questions. At this time Mr. Perkins became visibly confused and told Defendants Wang and Lee that he did not want to fight. Lee BWC at 4:17 -4:33. Wang BWC at 4:20 – 4:35. Mr. Perkins responded affirmatively when Defendant Wang asked if he had taken any medications that day. When asked if he had taken any meth or illegal drugs, Mr. Perkins responded no to both. Lee BWC at 4:53 - 5:01. Wang BWC at 4:56 – 5:04. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| 11. At this point, approximately three minutes after Perkins had answered the door, neither Officer Lee nor Officer Lee had attempted to arrest Perkins, touch him, or enter the apartment.  As Perkins continued to push the door further toward a closed position, Officer Wang instructed Perkins "you need to open the door for me." | 11. Wang Decl., ¶ 11; Exh. 1, 05:03 - 05:05 Lee Decl., ¶ 8; Exh. 4, 04:15 - 05:02. | 11. <u>Disputed in Part.</u> Defendant Wang had already entered the apartment in by crossing the threshold of Mr. Perkins door when Defendant Wang prevented Mr. Perkins from closing his door. Both Defendants Wang and Lee acknowledged in their depositions that they have been trained on the 4th Amendment's warrant requirement thus knew that crossing the threshold of Mr. Perkins home without probable cause was in contravention of their police training and the United States Constitution. Lee Depo. at 45:20-25, 46:11-47:6 |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Wang Depo. at 56:25-58:18

At the time Defendant Wang prevented Mr. Perkins from closing the door, the Defendant Officer's lacked probable cause to arrest Mr. Perkins. Mr. Perkins was free to end this encounter at any point and in fact signaled his intent to end the encounter by closing the door. Thus Mr. Perkins was under no obligation to comply with the Defendants request to open the door nor to answer any further questions.

Wang Depo. at 58:19-59:14.

Wang BWC at 4:13-4:20.

Lee Depo. at 48:14-49:2.

Lee BWC at 4:11-5:00.

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| 12. Perkins then suddenly opened the door fully, charged out of the apartment, and struck Officer Wang with his right fist. | 12. Wang Decl., ¶ 12; Exh. 1, 05:05; Lee Decl., ¶ 9. | 12. <u>Disputed in Part.</u><br><br>Defendant Wang was not sure if he was hit or not. In his deposition Defendant Wang testified that he was unsure if he blocked it or if he was hit. However, Defendant Wang was not injured at the time.<br><br>Wang Depo. at 61:14-17. |
| 13. Perkins then pushed at Officer Lee before turning to pursue Officer Wang. | 13. Wang Decl., ¶ 12; Exh. 1, 05:06; Lee Decl., ¶ 9; Exh. 4, 05:03 - 05:04. | 13. <u>Disputed.</u><br><br>Mr. Perkins did not push Defendant Lee. Defendant Lee makes no mention of being pushed in his deposition.<br><br>In his deposition, Defendant Wang testified that Mr. Perkins turned his body and attention towards Lee but has not |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | testified that Mr. Perkins pushed Defendant Lee. Wang Depo. at 62:23-63:1, 63:13-18. |
| 14. Officer Wang deployed his APD issued Taser, but it appeared to have no effect. | 14. Wang Decl., ¶ 12; Exh. 1, 05:07; Lee Decl., ¶ 9. | 14. <u>Disputed in part.</u> When utilized correctly, Tasers can affect a person in two separate ways: neuromuscular incapacitation (hereinafter NMI) and pain compliance. When a Taser fails to cause NMI, it nevertheless causes pain if the Taser is functioning correctly. Here, it is clear that Defendant Wang's Taser was operating correctly when he turned it on and cycled it for one cycle. Defendant Lee testified that he heard the distinctive crackling of the Taser. The crackling |

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

and probe deployment are also depicted in Defendant Lee and Wang's BWC footage.

When Defendant Reynoso arrived on scene, Mr. Perkins still had the Taser probes imbedded in his back with the wires attached. When Mr. Perkins arrived at West Anaheim Medical Center it was observed that Mr. Perkins still had a Taser spike in his back.

Thus while the Taser did not cause apparent NMI, it had an effect: pain. When Mr. Perkins was Tasered it caused an asphyxia type injury that began the continuum of exposure which, coupled with the Defendants use of the carotid restraint,

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

multiple strikes to Mr. Perkins head and body with fists and batons, and the compression, caused the excitotoxic injury that resulted in Mr. Perkins death.

Wang Depo. at 62:2-16, 63:2-64:12.

Wang BWC at 5:07-5:13.

Lee BWC at 5:04-5:09.

Reynoso Depo. at 60:10-61:13.

Edgar BWC at 18:13-23, 18:25. (Lacy Decl. Ex. 8)

Reynoso BWC at 17:30 – 18:00. (Lacy Decl. Ex. 9)

Omalu Depo. at 66:7-22, 69:1-14, 70:10-71:1, 71:2-15, 75:15-76:8. (Lacy Decl. Ex. 10)

Axon Taser Analysis at 1-2 (ANA-01911-12). (Lacy Decl. Ex. 11)

Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | West Anaheim Medical Center Medical Records for Justin Perkins at 1171 (ANA – 4043), 1178 (ANA – 4050). (Lacy Decl. Ex. 12) |
|---|---|---|
| 15. As Officer Wang backed up and Perkins pursued him down the hallway, Officer Lee attempted unsuccessfully to restrain Perkins from behind.  Officer Wang used his police radio to call for "Code 3" expedited backup, and Perkins continued to fight the officers while shouting "fuck yea, nigga" and "fuck you." | 15. Wang Decl., ¶ 12; Exh. 1, 05:08 - 05:23; Lee Decl., ¶ 9; Exh. 4, 05:05 - 05:20. | 15. <u>Disputed in Part.</u> After being Tasered in the back by Defendant Wang, Defendants Lee and Wang delivered a profound and significant beating to Mr. Perkins using their hands and collapsible batons. Mr. Perkins then turned towards the Taser, the source of the pain. As Mr. Perkins turned, Defendant Lee came up from behind and started to choke Mr. Perkins using an unapproved chokehold while Defendant Wang continued to strike Mr. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Perkins in his head and body. This illegal chokehold was against Anaheim Police Department policy and the Defendant Officer's training. Defendant Lee knew or should have known that it was dangerous to attempt a chokehold when Mr. Perkins is approximately 8 inches taller than Defendant Lee. Mr. Perkins was standing at the time and in order for Defendant Lee to attempt the carotid he put Mr. Perkins in a chokehold, pulling his head back and down, creating a significant risk of injury, in contravention of APD training. Defendant Lee and all APD officers are trained that extra care

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

must be taken when applying the carotid control hold during dynamic struggles as there is an increased risk of injury or death. The carotid restraint is meant to be employed when a subject is stationary. When there is a dynamic struggle, a carotid hold is rarely successful and most often becomes mechanical compression of the neck which is likely to cause injury. APD training dictates that an Officer should never attempt to the carotid control hold for more than 30 seconds at once. Mr. Perkins continued to struggle for his life as the Defendants beat, Tasered, and choked him.

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Lee Depo at 50:25-51:25, 52:1-17, 52:18-53:5, 55:14-25. |
| | | Wang Depo at 29:19-31:4, 62:2-63:1, 63:2-64:12, 65:12-67:12. |
| | | Omalu Depo. at 77:20-78:10. |
| | | David Michael Perkins Depo. at 53:21-56:16. (Lacy Decl. Ex 13) (hereinafter Uncle Mike Depo.) |
| | | Teresa Perkins Depo. at 77:3-25, 78:1-13, 78:15-79:8 |
| | | APD Policy 300 - Carotid Control Hold at 3-4. (Lacy Decl., Ex 14). |
| | | Carotid Restraint Technique Manual at 95, 99-101, 112. (Lacy Decl., Ex 15). |
| 16. Officer Wang applied | 16. Wang Decl., ¶ 12. | 16. <u>Disputed in part.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

his taser in drive-stun mode to Perkins' back, which had no apparent effect. Officer Wang then struck Perkins several time with his fist.

When utilized correctly, Tasers in drive stun mode can cause either pain or NMI.

Here, Defendant Wang's Taser was operating correctly evidenced by the fact that he turned it on and cycled it for one cycle before he successfully utilized it in probe mode, *supra* at paragraph 14. Moreover, Defendant Lee admitted in his deposition that the Taser made contact with Mr. Perkin's back while it was in drive-stun mode.

Thus while the Taser did not cause apparent NMI, it had an effect: pain. This is the second time that Mr. Perkins was Tasered by Defendant Wang. It is against APD policy and

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

training to administer multiple applications unless necessary to outweigh the substantial risk. Tasering is an asphyxia type injury that began the continuum of exposure which, coupled with the Defendants use of the carotid restraint, multiple strikes to Mr. Perkins head and body with fists and batons, and the compression of his body, caused the excitotoxic injury that resulted in Mr. Perkins death.

Moreover, Defendant Wang struck Plaintiff in the face four times using his fist before using his collapsible ASP metal baton to continue to strike Mr. Perkins many times

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | in the legs, back, and head. |
| | | Wang Depo. at 62:2-16, 63:2-64:12, 65:12-67:12. |
| | | Wang BWC at 5:07-5:25. |
| | | Lee Depo. at 54:25-55:13, 55:14-25. |
| | | Lee BWC at 5:04-5:28. |
| | | Omalu Depo. at 66:7-22, 69:1-14, 70:10-71:1, 71:2-15, 75:15-76:8. |
| | | Uncle Mike Depo. at 53:21-56:16 |
| | | Axon Taser Analysis at 1-2 (ANA-01911-12). |
| | | APD Policy 309 Conducted Electrical Weapon - Special Deployment Considerations. (Lacy Decl. Ex. 16) |
| | | APD Policy 309 Conducted Electrical |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | Weapon – Medical Treatment. |
|---|---|---|
| 17. To stop the attack, Officer Lee tried to position himself to apply a carotid restraint hold to Perkins, but before he could get his arm in position he felt an extreme and sharp pain in his right arm. | 17. Lee Decl., ¶ 10; Exh. 1, 05:15 - 05:25. | Ex. 17 <u>Disputed in Part.</u> After choking Mr. Perkins while attempting to incorrectly perform a rear takedown with his arm across Mr. Perkins neck, Defendant Lee again attempted to apply the carotid hold, this time with Mr. Perkins leaning forward. The struggle was still dynamic and ongoing so Defendant Lee knew or should have known that it was dangerous to attempt the carotid hold. Moreover, Defendant Lee had already applied compression to Mr. Perkins neck when he incorrectly performed the rear takedown, so Defendant Lee know or |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

<div style="transform: rotate(-90deg)">

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

</div>

| | | |
|---|---|---|
| | | should have known that it would be dangerous and in contravention of APD policy to attempt to apply the chokehold again.<br><br>Defendant Lee had his arm across Mr. Perkins' neck during the time that he was attempting the rear takedown and the carotid told, causing Mr. Perkins airways to be compressed.<br><br>Lee Depo. at 49:25-50:24, 50:25-51:25, 52:1-17, 52:18-53:5.<br><br>Uncle Mike Depo. at 53:21-56:16. |
| 18. Officer Lee then punched Perkins several times, and when Perkins released his arm Officer Lee realized that Perkins had bitten off the end | 18. Lee Decl., ¶ 10. | 18. <u>Disputed in Part.</u><br>Defendant Lee's arm was near Mr. Perkins face because he had applied an illegal chokehold twice during the encounter in |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| of his pinky finger. For the rest of the encounter, Officer Lee's hand was bleeding severely, and he was concerned that he was losing the ability to defend himself. | | contravention of Anaheim Police Department Training.<br><br>Defendant Lee and Wang then proceeded to punch Mr. Perkins in the head multiple times.<br><br>Lee Depo. at 49:25-50:24, 50:25-51:25, 52:1-17, 52:18-53:5, 54:5-20.<br><br>Uncle Mike Depo. at 53:21-56:16.<br><br>Carotid Restraint Technique Manual at 111. |
| 19. Officer Wang then swung his collapsible police baton at Perkins, who charged at him as he back peddled down the hallway.  As Perkins struck Officer Wang, Officer Lee deployed his taser but it had no apparent effect. | 19. Wang Decl., ¶ 13; Exh. 1, 05:28 - 05:42; Lee Decl., ¶ 11; Exh. 1, 05:35. | 14. <u>Disputed in part.</u><br><br>When utilized correctly, Tasers can affect a person in two separate ways: NMI and pain compliance. When a Taser fails to cause NMI, it nevertheless causes pain if the Taser is functioning correctly. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Here, it is clear that Defendant Lee's Taser was operating correctly as the probes deployed and the crackling of the Taser can be heard on the Defendants BWC.

When paramedics arrived on scene, Mr. Perkins still had the Taser probes imbedded in his back with the wires attached. When Mr. Perkins arrived at West Anaheim Medical Center it was observed that Mr. Perkins still had a Taser spike in his back.

Thus while the Taser did not cause apparent NMI, it had an effect: pain. When Mr. Perkins was Tasered it caused an asphyxia type injury that began the continuum of exposure which, coupled

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | with the Defendants use of the carotid restraint, multiple strikes to Mr. Perkins head and body with fists and batons, and the compression, caused the excitotoxic injury that resulted in Mr. Perkins death. |

Wang Depo. at 65:12-67:12

Wang BWC at 05:28 - 05:42.

Lee Depo. at 55:14-25.

Omalu Depo. at 66:7-22, 69:1-14, 70:10-71:1, 71:2-15, 75:15-76:8.

Uncle Mike Depo. at 53:21-56:16.

Axon Taser Analysis at 1-2 (ANA-01911-12).

West Anaheim Medical Center Medical Records for Justin Perkins at 1171

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | (ANA – 4043), 1178 (ANA – 4050). |
|---|---|---|
| 20. Officer Wang believed Perkins was winning the fight.  He had observed that Officer Lee was bleeding, and became physically exhausted. He feared that the officers' lives were in danger because Perkins could gain access to one of their weapons. | 20. Wang Decl., ¶ 13. | 20. <u>Disputed in Part.</u> It is difficult to remove weapons from retention holsters, such as those utilized by Anaheim Police Department, because the gun is locked in place. Defendant Wang and Lee utilized a Level 2 retention holster. To remove a gun from a Level 2 holster requires pressing a small hook into the release position, pushing the hood forward, and pulling the gun straight out. Defendants Wang and Lee were required to receive training on removing their weapons from the holster. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | Wang Depo. at 71:17-73:12. |
|---|---|---|
| 21. Perkins then placed his arms in a hold around Officer Lee's neck, resulting in a frontal headlock, which he maintained for approximately 7 seconds as he pulled Officer Lee down the hall. | 21. Wang Decl., ¶ 14; Exh. 1, 05:43 - 05:52; Exh. 2; Lee Decl., ¶ 11; Exh. 1, 05:43 - 05:52. | 21. <u>Disputed.</u><br><br>David Michael Perkins, a percipient eyewitness to the incident, described Justin as "just trying to cover his face" as Defendant Lee and Wang "beat him like a drum," slugging Mr. Perkins and hitting him with their batons. David Perkins observed that Mr. Perkins was not fighting back after Defendant Officers began beating him. Defendants Lee and Wang repeatedly struck Mr. Perkins with metal batons as Mr. Perkins attempted to keep Defendant Lee from striking him further. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | Uncle Mike Depo. at 53:21-56:16<br><br>Lee BWC at 5:40 – 5:55. |
|---|---|---|
| 22. Officer Wang was concerned that Perkins' headlock on Officer Lee would either choke him or break his neck.  He struck Perkins again to induce him to release Officer Lee. Perkins then turned and followed Officer Wang through an exterior doorway and fell to the ground. | 22. Wang Decl., ¶ 14; Exh. 1, 05:53 - 05:57; Lee Decl., ¶ 11. | 22. <u>Disputed in Part.</u><br>The Defendants continued to strike at Mr. Perkins with their fists and batons even after Defendant Lee's finger was bitten off. The Defendants struck Mr. Perkins in the face, head, neck, back, and legs multiple times. The Defendants continued to hit Mr. Perkins as he exited the doorway. As he exited, Mr. Perkins collapsed to the ground.<br><br>Uncle Mike Depo. at 53:21-56:16, 57:25-60:12.<br><br>Lee BWC at 5:40 – 5:55. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| 23. The officers shouted "get down," "stop," and "relax," but Perkins stood up and continued to physically resist their efforts to restrain him. | 23. Wang Decl., ¶ 15; Exh. 1, 05:58 - 06:33; Lee Decl., ¶ 11. | 23. <u>Disputed in Part.</u><br><br>Mr. Perkins, a man with the mental capacity of a twelve-year-old, had been questioned, beaten, Tasered, and choked by Defendants Lee and Wang. Mr. Perkins attempts to stand up were not an act of physical resistance but of self-preservation. Moreover, Mr. Perkins was merely trying to stay on his feet, he was not striking the Defendants or trying to run.<br><br>Uncle Mike Depo. at 53:21-56:16.<br><br>Lee BWC at 5:50 – 6:45. |
| 24. Officer Wang was out of breath, exhausted from the struggle with Perkins, and concerned that at any | 24. Wang Decl., ¶ 15; Lee Decl., ¶ 12. | 24. <u>Disputed.</u><br><br>Mr. Perkins was in obvious distress. He was out of breath, had been |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| moment Perkins could re-escalate his violent attack. Officer Lee was also concerned that Perkins was gathering himself to continue the attack. | | beaten, chased, Tasered, choked, and had just fallen to the ground. Lee BWC at 5:57 – 6:10. |
| 25. Officer Wang elected to apply a carotid restraint hold, which is a serious use of force used to render an actively resisting suspect unconscious by compressing the sides of the neck where the carotid arteries are located, thereby restricting the flow of blood to the brain. | 25. Wang Decl., ¶ 16. | 25. <u>Undisputed.</u> |
| 26. As Officer Wang tried to get into position to apply the hold, Perkins reached for Officer Wang's gun | 26. Wang Decl., ¶ 17. | 26. <u>Disputed in Part.</u> Defendant Wang was already laying on the ground on his right side, |

PG. 37          Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

belt. As Perkins continued to physically resist, it took approximately a minute for Officer Wang to get into position to apply the hold.

pinning his weapon to the ground, when he began to apply the carotid hold, thus preventing Mr. Perkins from even reaching Defendant Wang's weapon. Moreover, Defendant Wang utilizes a Level 2 holster which locks the gun in place unless it is unlocked and pulled out in specific manner, *supra* at 20.

Wang Depo. at 70:18-71:16.

Defendant Wang's application, or attempted application, of the carotid hold for a full minute is in contravention of APD training. APD training mandates the carotid hold should not be attempted for longer than 30

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | seconds. Moreover, the carotid should not be attempted more than twice within a 24-hour period. Defendant Lee had already attempted to apply the carotid twice during the encounter.<br><br>Carotid Restraint Technique Manual at 111-12.<br><br>Carotid Control Hold by Anaheim Police Department Arrest and Control Staff – Time at ANA-00445 (Lacy Decl. Ex 17)<br><br>Wang Depo. at 29:19-31:4, 69:5-70:17. |
| 27. Officer Wang applied the carotid restraint hold to Perkins for no more than ten (10) seconds.  He then felt Perkins stop resisting | 27. Wang Decl., ¶ 17; Lee Decl., ¶ 12. | 27. <u>Disputed.</u><br><br>Defendant Wang put his arm around Mr. Perkins neck while they were still on the ground.  Defendant |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| and promptly released the hold.  The officers also heard Perkins snoring, which confirmed the effective application of the hold. | | Wang left his arm around Mr. Perkins neck for over a minute in contravention of Defendant Wang's training. APD training dictates that a carotid restraint be removed immediately upon submission or unconsciousness. Defendant Wang still had his arm around Mr. Perkins neck as the Defendants handcuffed him, despite Mr. Perkins already being unconscious. Uncle Mike depo. at 56:1-16; 76:18-77:17. Wang BWC at 5:59-7:41. Carotid Restraint Technique Manual at 111. |
| 28. Officer Lee then handcuffed Perkins, and the officers | 28. Wang Decl., ¶ 18; Lee Decl., ¶ 12. | 28. <u>Disputed.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

moved him into a recovery position on his side and verified his breathing and pulse. Perkins regained consciousness, and soon several other officers arrived.

Defendant Wang still had Mr. Perkins in the carotid hold as Defendant Lee was applying handcuffs to Mr. Perkins despite his unconscious state.

Mr. Perkins had still not regained consciousness two minutes after he lost consciousness due to Defendant Wang's application of the carotid hold. APD trains its officers, including the Defendant Officers, that if vital signs are not present after an attempted or successful application of the carotid hold, the subject is suffering a medical emergency. In addition, if a subject is not conscious within 30 seconds of an attempted or successful application of the carotid hold, the

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

subject is suffering a medical emergency. Moreover, once a subject is conscious, they should reach a reasonable level of consciousness within 30 seconds. If the subject is incoherent or in an altered state of consciousness for more than 30 seconds after application of the carotid hold, it is likewise deemed a medical emergency that requires APD officers, including the Defendant Officers, to activate Emergency Medical Response and closely monitor the subject. Mr. Perkins was clearly suffering a medical emergency when he was still unconscious two minutes after Defendant Wang applied

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | the carotid hold and it was thus imperative that Mr. Perkins be assessed by a qualified medical professional as soon as possible.<br><br>Carotid Restraint Manual at 111.<br><br>Wang BWC at 7:00 – 9:56.<br><br>Edgar BWC at 4:14 – 4:24.<br><br>Uncle Mike depo. at 56:1-16; 76:18-77:17. |
| 29. Within a few seconds of handcuffing Perkins, Officer Lee used his police radio to request that paramedics respond to the incident location. Two other officers, Kenneth Edgar and Ricardo Reynoso, were travelling to the | 29. Lee Decl., ¶ 12; Exh. 1, 07:52; Declaration of Kenneth Edgar ("Edgar Decl."), ¶¶ 3, 5; Exh. 5, 02:18; Declaration of Ricardo Reynoso ("Reynoso Decl."), ¶¶ 3, 5; Exh. 6, 01:47. | 29. <u>Undisputed.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| scene in response to Officer Wang's "Code 3" call, and they heard the request for paramedics before they arrived. After Officers Edgar and Reynoso arrived at the scene, Officer Lee advised them in person that he had requested paramedics. | | |
| 30. Officers Edgar and Reynoso observed that Perkins was on the ground and handcuffed, that Officers Wang and Lee were breathing heavily, and that Officer Lee was bleeding from an injury. | 30. Edgar Decl., ¶ 6; Exh. 5, 03:47 - 04:09; Reynoso Decl., ¶ 6; Exh. 6, 03:17 - 03:39. | 30. Undisputed. |
| 31. As Officers Edgar and Reynoso took custody of Perkins, Officer | 31. Wang Decl., ¶ 18; Exh. 1, 09:15 - 10:00; Edgar Decl., ¶ 7; | 31. Disputed in Part. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| Wang informed them that he had applied the carotid restraint hold to Perkins. | Exh. 5, 04:19 - 04:21; Reynoso Decl., ¶ 6; Exh. 6, 03:48 - 03:50. | When Defendants Edgar and Reynoso took custody of Mr. Perkins he was clearly suffering from a medical emergency. Mr. Perkins had been unconscious for several minutes and both Defendant Edgar and Reynoso were on notice that the carotid hold had been used. Instead of monitoring Mr. Perkins, the Defendant Officers proceeded to search Mr. Perkins and forcibly roll him over to his other side. Mr. Perkins head clearly lulled as he was rolled over by the Defendant Officers and his eyes were closed, clearly indicated he was still unconscious. |

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Edgar Depo. at 20:9-21:17, 23:17-24:6. (Lacy Decl. Ex 18).

Wang Depo. at 31:5-31:20.

Edgard BWC at 4:00 – 4:51.

While Defendant Wang informed Defendants Edgar and Reynoso that he performed the carotid once, Defendant Lee did not inform Defendants Edgar and Reynoso that he had applied the carotid twice during a dynamic struggle. APD policy that use of the hold must be reported to both medics and the officer's supervisor. Neither Defendant Reynoso nor Edgar is a supervisor.

Lee Depo. at 66:13-18.

PG. 46                    Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | APD Policy 300 Use of Force - Carotid Control Hold. |
|---|---|---|
| 32. Officers Edgar and Reynoso verified that Perkins was breathing, and assisted him to a sitting recovery position on the ground.  Perkins was conscious, with his eyes open, but non-verbal. He was breathing somewhat heavily, but his breathing did not appear to be impaired or distressed.  Officer Reynoso told him "Just keep breathing, OK? You're doing fine.  We've got the paramedics on the way, OK?  We'll get you some help, | 32. Edgar Decl., ¶ 7; Exh. 5, 04:40 - 04:50; Reynoso Decl., ¶ 7; Exh. 6, 04:10 - 04:20, 06:20 - 06:32. | 32. <u>Disputed in Part.</u> Mr. Perkins was clearly experiencing a medical emergency. While Mr. Perkins' eyes opened briefly as Defendant's Edgar and Reynoso sat him up, Mr. Perkins was clearly in an altered state and not fully conscious: Mr. Perkins was non-verbal; unable to support his neck or body weight; and his breathing was labored. In his deposition, Defendant Reynoso described Mr. Perkins as breathing heavily, grunting at times, and fixed in a "thousand-yard stare" when he arrived on scene. The Defendant |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| alright?" | | Officers have been trained that ocular fixation is a side-effect of the carotid hold and indicates the subject must be closely monitored. Edgard BWC at 4:40 – 6:05. Reynoso Depo. at 64:7-65:16. Carotid Restraint Control Hold Instructor Course at 127, slide 49. (Lacy Decl. Ex 19). Carotid Restraint Technique Manual at 111-12. Carotid Control Hold by Anaheim Police Department Arrest and Control Staff |
| 33. Officer Edgar then interviewed a person standing nearby, | 33. Edgar Decl., ¶ 8; Exh. 5, 05:00 - 07:45. | 33. Undisputed. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| David Perkins, who advised that Perkins was his nephew who lived with him, was supposed to be taking medications for "bipolar and all that," and was schizophrenic. | | |
| 34. Around this time Officers Edgar and Reynoso heard sirens from approaching emergency vehicles. They were aware that paramedics would be arriving in an adjacent parking lot approximately 70 feet away. To facilitate first aid, they wanted to get Perkins more accessible to the paramedics by moving him away from the confined | 34. Edgar Decl., ¶ 9; Exh. 5, 07:53 - 8:20; Reynoso Decl., ¶ 8; Exh. 6, 07:23 - 7:50. | 34. <u>Disputed in Part.</u> Mr. Perkins was still clearly in an altered state of consciousness and his breathing was labored and slow when Defendants Edgar and Reynoso heard the paramedics arrive in the parking lot. Though Defendants Wang, Lee, Edgar, and Reynoso were all aware that Mr. Perkins was experiencing a medical emergency, none hastened to summon the |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| area where he was under an exterior staircase. | | paramedics to Mr. Perkins location.<br><br>Edgar BWC at 7:53 – 8:58.<br><br>Reynoso BWC at 7:23 – 8:28<br><br>Reynoso Depo. at 35:5-19.<br><br>Reynoso BWC at 7:20 – 8:30. |
| 35. Perkins had been conscious and sitting upright for several minutes.  He appeared tense, but not actively resistive or in distress. Officer Edgar asked Perkins "can you get up, Justin? Can you walk with us?" | 35. Edgar Decl., ¶ 9; Exh. 5, 08:49 - 08:54; Reynoso Decl., ¶ 8; Exh. 6, 08:20 - 08:25. | 35. <u>Disputed in Part.</u><br>Mr. Perkins was experiencing a medical emergency. Mr. Perkins had not fully regained consciousness since application of the carotid hold by Defendant Wang and was still in an altered state. Mr. Perkins had been entirely nonverbal, breathing heavily and grunting with the effort of breathing, and was staring |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris<br>9701 Wilshire Boulevard, Suite 1000<br>Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | off into the distance was glazed, unfocused eyes. |
| | | Edgar BWC at 3:50 – 8:54. |
| | | Reynoso BWC at 3:20 – 7:30. |
| | | Reynoso Depo. at 35:5-19. |
| 36. Perkins responded in the affirmative.  He then repositioned his feet to stand up, which indicated to the officers that he understood what was happening and was cooperating as they assisted him to a standing position. | 36. Edgar Decl., ¶ 9; Exh. 5, 08:54 - 09:00; Reynoso Decl., ¶ 8; Exh. 6, 08:20 - 08:30. | 36. <u>Disputed.</u> Over ten minutes after being subjected to the carotid hold and losing consciousness, Mr. Perkins had still not regained full consciousness. Upon being informed that emergency medical personnel were finally on scene, Mr. Perkins grunted a barely audible yes that not even Defendant Reynoso, who was right next to the Mr. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| | | Perkins, could hear. Mr. Perkins required the assistance of both Defendant Edgar and Reynoso to stand. Edgar BWC at 8:51 – 9:01. Reynoso BWC at 7:31 – 8:30. Reynoso Depo. at 66:15-67:6 |
| 37. After walking approximately 10-15 feet, Perkins appeared cooperative and capable of walking further, and Officer Reynoso indicated that he would continue walking with Perkins toward the lot where paramedics were expected to arrive. | 37. Edgar Decl., ¶ 10; Exh. 5, 09:01 - 09:16; Reynoso Decl., ¶ 9; Exh. 6, 08:31 - 08:45. | 37. <u>Disputed.</u> Mr. Perkins was still in the midst of a medical emergency. Mr. Perkins breathing was still labored, and his consciousness was still altered. Despite Mr. Perkins desperate need for the medical help he is mandated to receive by APD policy, Defendants Edgar and Reynoso force |

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Mr. Perkins to shuffle and stumble for 10-15 feet to the stairs outside the complex. Defendants Edgar and Reynoso initially tried to sit Mr. Perkins on the steps, but when Mr. Perkins had difficulty sitting down, the Defendant Officers decided to walk Mr. Perkins even further. As they began moving again, Mr. Perkins was clearly stumbling and not in control of his body and his gaze is distant. Edgard BWC at 9:00 – 9:25. |
| 38. After taking a few more steps, Perkins became resistive, rotating his body and using his handcuffed hands to grab at | 38. Reynoso Decl., ¶ 9; Exh. 6, 08:46 - 08:52. | 38. <u>Disputed.</u> As Defendants Edgar and Reynoso commanded Mr. Perkins to continue walking, he lost his balance and began to |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| Officer Reynoso's pants in the groin area. | | stumble. Mr. Perkins hands are tensed as he loses control of his body and begins to fall. Mr. Perkins continued to tense as he stumbles and reaches for something to hold onto. Defendant Reynoso testified that he was merely grabbing at his crotch area. Later in the encounter Mr. Perkins also attempted to hold Mr. Reynoso's hand, evidence that Mr. Perkins was merely reaching for anything he could hold and was not reaching for weapons during this encounter.<br><br>Edgar BWC at 9:15 - 9:40, 10:30 – 10:42.<br><br>Reynoso BWC at 8:45 – 9:10, 10:00 – 10:15. |

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Edgar Depo. at 31:15-32:19.<br><br>Reynoso Depo. at 68:17-69:8, 73:7-20, 74:13-75:6, 75:14-76:17. |
| 39. Officer Edgar approached, and Perkins used his handcuffed hands to grab at his belt area where he keeps his gun. | 39. Edgar Decl., ¶ 10; Exh. 5, 09:17 - 09:30. | 39. <u>Disputed.</u><br><br>Mr. Perkins was reaching for anything that was in reach of his cuffed hands in attempt to steady himself as he lost his balance. Mr. Perkins' hand was nowhere near Defendant Edgar's gun or belt area as his hands searched for something solid. As Defendant Edgar put his hand into Mr. Perkins, Mr. Perkins held onto it as he was guided to the wall behind him for support.<br><br>Edgar BWC at 9:17 – 9:39. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL
MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| 40. The officers decided not to proceed further toward the lot, and instead directed Perkins to sit where they were. They repeatedly admonished Perkins to "just relax," but he continued to actively resist, so they laid him down on his side. | 40. Edgar Decl., ¶ 10; Exh. 5, 09:31 - 09:58; Reynoso Decl., ¶ 10; Exh. 6, 09:01 - 09:26. | 40. <u>Disputed.</u> Mr. Perkins was not able to walk any further as he was experiencing a profound medical emergency. As Defendants Edgar and Reynoso attempted to force Mr. Perkins to continue walking, he stumbled and lost his balance. Mr. Perkins was then guided to the wall behind him for support as he continued to stumble and sway. Mr. Perkins then collapsed to the ground as Defendants Edgar and Reynoso attempted to catch him. Mr. Perkins was not actively resisting at the time; he was experiencing a medical emergency and |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| | | was in an altered state of consciousness.<br><br>Edgar BWC at 9:40 – 10:00.<br><br>Reynoso BWC at 9:00 – 9:40. |
| 41. On the ground, Perkins rolled onto his stomach.  For approximately a minute he seemed calmer, and Officer Reynoso crouched next to him with his right hand holding Perkins' left forearm. | 41. Reynoso Decl., ¶ 11. | 41. <u>Disputed in Part.</u><br>As Mr. Perkins was laying on the ground dazed, he slumped forward onto his stomach. Defendants Edgar and Reynoso are trained that a subject who has been Tased and subjected to the carotid hold must be put in a recovery position and monitored. Moreover, the Defendant Officers training and APD policy dictates that once an Officer has used the carotid hold on a person that person's wellbeing is the officer's |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

responsibility until they are seen by medical personnel. When Mr. Perkins slumped forward onto his stomach, instead of rolling Mr. Perkins back into a recovery position where the two Defendants could monitor him, Defendant Reynoso allowed Mr. Perkins to remain on his stomach with his hands cuffed behind his back, a position that does not allow for any recovery. Defendant Reynoso then puts him hands on Mr. Perkins back to keep him on his stomach. Mr. Perkins was on his stomach for at least a minute.

Edgard Depo. at 30:1-10, 30:11-22.

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

<table>
<tr><td></td><td></td><td>Edgar BWC at 10:00 – 11:10.

Reynoso BWC at 9:30 – 10:45.

Reynoso Depo. at 41:5-22, 41:23-42:11.

APD Policy 300.3.4 Use of Force – Carotid Control Hold.

APD Policy 309.7 Conducted Electrical Weapon – Medical Treatment

APD Policy 309 Conducted Electrical Weapon – Training

Carotid Restraint Technique Manual at 99-101, 111-112.</td></tr>
<tr><td>42. Officer Edgar became aware that part of Officer Kenny Lee's finger had been found nearby,</td><td>42. Edgar Decl., ¶ 11; Exh. 5, 10:46 - 11:04.</td><td>42. Disputed.

Defendant Edgar was told by an unknown Officer standing in the hallway that Defendant Lee's</td></tr>
</table>

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

and he verbally conveyed a request to another officer to ask paramedics, who had arrived in the parking lot, to retrieve it.

finger had been found. Defendant Edgar then walked to the parking lot, where other officers and the paramedics were staged. Defendant Edgar was thus aware that paramedics had arrived on the scene, yet he still did not summon the paramedics to Mr. Perkins, who was still experiencing a medical emergency and had received no care for the severe beating, multiple Taser applications, and several uses of the carotid hold, in direct contravention of APD training and policy. Instead, Defendant Edgar calmly asked another officer to get an icepack for Defendant Lee's severed finger. Defendant

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

Edgar did not inform this officer that Mr. Perkins had been choked and Tasered nor that Mr. Perkins was experiencing a medical emergency as defined by APD training and policy.

Mr. Perkins was still on his stomach when Defendant Edgar returned to Mr. Perkins, however when he returned Defendant Reynoso was putting weight on Mr. Perkins prone body, keeping from rolling into a recovery position. Defendant Edgar then also put his hands on Mr. Perkins back, keeping him pinned in a prone position. Defendant Reynoso then puts his knee on Mr. Perkins leg, then buttocks, further

Case No. 8:19-cv-00315-JLS-JDE
**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

preventing him from rolling into a recovery position and restricting his breathing. Mr. Perkins had been in the prone position now for over two minutes. Defendant Edgar and Reynoso were trained by APD not to leave someone in the prone position nor put pressure on their back, especially after use of the carotid restraint. Defendants Edgar and Reynoso disregarded this training by leaving Mr. Perkins in a prone position and putting weight on his back to prevent him from rolling over. Defendants Edgar and Reynoso were aware that the carotid restraint had been used on Mr. Perkins, that he was suffering a medical

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | emergency as he had not gained full consciousness within 30 seconds of the application, and that paramedics were on scene but not evaluating and assisting Mr. Perkins as required by policy and training. |
| | | Edgar BWC at 10:00 – 12:40. |
| | | Reynoso Depo. at 41:5-22, 41:23-42:11, 42:13-43:5. |
| | | Morrison Depo. at 24:9-16. (Lacy Decl. Ex. 20) |
| | | APD Policy 300.3.4 Use of Force – Carotid Control Hold. |
| | | APD Policy 309.7 Conducted Electrical Weapon – Medical Treatment |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | APD Policy 309.9 Conducted Electrical Weapon – Training Carotid Restraint Technique Manual at 99-101, 111-112. |
|---|---|---|
| 43. Two paramedics then walked closely by where the officers were crouching with Perkins twice.  The officers then believed that the paramedics were aware of Perkins' specific location and status, and they reasonably believed that the paramedics would address the situation based on their professional assessment. | 43. Edgar Decl., ¶ 11; Exh. 5, 13:33 - 1340; Reynoso Decl., ¶ 12. | 43. <u>Disputed in Part.</u> The Defendants were aware that Mr. Perkins was suffering from a medical emergency, *supra* at paragraph 42, and had been trained to recognize that Mr. Perkins was suffering a medical emergency. Despite this and Mr. Perkins obvious distress, the Defendant Officers did not inform the paramedics that walked within a few feet of Mr. Perkins that he was experiencing a medical emergency as required by |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

policy and training. The Defendant Officers also did not inform the paramedics that Mr. Perkins had been subjected to multiple applications of a Taser and the carotid hold, in contravention of their policy and training.

The Defendants knew, or at the very least should have known through policy and training, that it was their duty and responsibility to provide care, including providing the necessary medical care, for Mr. Perkins while he was in their custody. Defendants Edgar and Reynoso breached this duty and responsibility by failing to timely summon medical care that was

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | available for Mr. Perkins as he was suffering an ongoing medical emergency. |
| | | Edgar Depo. at 22:1-15, 32:23-33:23. |
| | | Reynoso Depo. at 31:2-8, 31:23-33:7, 34:14-35:4, 35:5-19, 38:12-39:4, 39:5-18, 41:5-22. |
| | | APD Policy 300.3.4 Use of Force – Carotid Control Hold. |
| | | APD Policy 309.7 Conducted Electrical Weapon – Medical Treatment |
| | | APD Policy 309.9 Conducted Electrical Weapon – Training |
| | | Carotid Restraint Technique Manual at 99-101, 111-112. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| 44. After a brief period of calm, Perkins resumed his active resistance.  Perkins exhibited vigorous leg strength, and Officers Edgar and Reynoso restrained his legs to prevent him from kicking them, or arising to flee.  As the officers transitioned Perkins onto his right side, he remained agitated and strong, and continued to grab at Officer Reynoso and push with his legs. | 44. Edgar Decl., ¶ 12; Exh. 5, 11:06 - 13:30; Reynoso Decl., ¶ 11; Exh. 6, 10:37. | 44. <u>Disputed.</u><br><br>Mr. Perkins was not resisting. Mr. Perkins had been in a prone position with Defendant Edgar and Reynoso's hands and knees compression his body for well over two minutes. Mr. Perkins had already been struggling to breathe before he fell to the ground as the Defendant Officers attempted to force him to walk to the parking lot. Mr. Perkins was struggling to breathe and was attempting to roll into the recovery position that Defendants Edgar and Reynoso were trained to put Mr. Perkins in, despite the Defendants attempts to keep him in a prone position. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL
MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Mr. Perkins was still handcuffed at this time with his hands behind his back and was being monitored by two officers. Mr. Perkins was still nonverbal and breathing hard. Mr. Perkins body was clearly tensing; however tensing is not active resistance is in fact further evidence of the medical emergency he was experiencing due to the collective actions of the Defendant Officers. APD training dictates that possible side-effects of the carotid that indicate a medical emergency are muscular convulsions and ocular fixation. Edgar BWC at 11:06 - 13:30. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Reynoso BWC at 10:30 – 13:00. Carotid Restraint Technique Manual at 127, slide 49. *Supra* at paragraph 14, 15, 16, 17, 18, 19, 22, 25, 27. |
| 45. As the officers continued to restrain Perkins from kicking or arising, an APD supervisor arrived and directed them to attach a hobble leg restraint to Perkins' feet to impede his kicking. | 45. Edgar Decl., ¶ 14; Exh. 5, 14:50 - 15:30; Reynoso Decl., ¶ 13; Exh. 6, 14:20 - 15:00. | 45. <u>Disputed in Part.</u> In contravention of APD training and policy, Defendants Edgar and Reynoso did not inform the APD supervisor, Sergeant Moody, that Mr. Perkins had been subjected to multiple Taser applications and the carotid hold. Without knowing whether Mr. Perkins was experiencing a medical emergency, Sgt. Moddy ordered Mr. Perkins be hobbled in contravention of APD |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL
MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

policy which mandates that officers be trained not to apply restraint techniques that would impair respiration following Taser application. Moreover, APD training dictates that the hobble should not be used on someone experiencing a medical emergency as it further worsen their condition. APD policy advises that use of the hobble, especially when a subject is kept on their stomach, can reduce a subject's ability to breathe and thus the subject must be closely monitored. Moreover, APD policy dictates that the hobble should be removed if the subject is experiencing a medical emergency, such

PG. 70                              Case No. 8:19-cv-00315-JLS-JDE

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | as Mr. Perkins was experiencing here. |
| | | Reynoso Depo. at 81:20-82:14, 85:4-86:1, 86:25-87:11, 87:16-88:3. |
| | | Morrison Depo. at 32:9-33:17. |
| | | APD Policy 300.3.4 Use of Force – Carotid Control Hold. |
| | | APD Policy 309.7 Conducted Electrical Weapon – Medical Treatment. |
| | | Carotid Restraint Technique Manual at 99-101, 111. |
| | | APD Policy 306 - Hand Cuffing and Restraint (Lacy Decl. Ex 21). |
| 46. Another police officer who was nearby, Casey Morrison, approached and began | 46. Edgar Decl., ¶ 14; Reynoso Decl., ¶ 13; Declaration of Casey | 46. <u>Undisputed.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| assisting. | Morrison ("Morrison Decl."), ¶ 5. | |
| 47. The initial steps for attaching a hobble restraint are to place the subject on his stomach temporarily and bend his legs at the knees so that his feet are together behind his buttocks. In that position the subject's feet can be secured together with the hobble. | 47. Edgar Decl., ¶ 15; Reynoso Decl., ¶ 14; Morrison Decl., ¶ 6. | 47. <u>Undisputed.</u> |
| 48. Perkins continued to resist, and to prevent him from rolling over during application of the hobble restraint, Officer Reynoso restrained his upper body.  While crouching with his feet on the ground, Officer Reynoso | 48. Edgar Decl., ¶ 15; Exh. 5, 15:50 - 15:54; Reynoso Decl., ¶ 15; Exh. 6, 15:30 - 17:30. | 48. <u>Disputed.</u> Mr. Perkins was not resisting but was in the midst of a medical emergency. Mr. Perkins was in the custody and control of the Defendant Officers and was not attempting to flee. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| leaned his right knee on Perkins right rear-shoulder area, applying minimal pressure there intermittently during the next two minutes. Officer Reynoso did not place his full weight on Perkins' shoulder, and did not apply any pressure to Perkins' neck or lung areas. | | Edgar BWC at 10:00 – 16:00. Reynoso BWC at 9:30 – 17:30. |
| 49. Officer Reynoso's intention was to temporarily restrain Perkins from rolling back on his side until the hobble was properly attached, and then to reposition him on his side.  During this time, Officer Reynoso neither heard nor saw any | 49. Reynoso Decl., ¶ 15; Exh. 6, 16:04 - 16:09. | 49. Disputed. Defendants Edgar and Reynoso had kept Mr. Perkins in a prone position for over two minutes prior to the application of the hobble. Per APD policy and training, Mr. Perkins should have been in a recovery position during |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| indication that Perkins was having difficulty breathing or that he was in immediate physical distress. Officer Reynoso told Perkins "Once we have the hobble, we'll roll you on your side. OK?" | | that time because he was experiencing a medical emergency from the multiple applications of the Taser and Carotid hold. Mr. Perkins was not actively resisting, supra at 47-48, thus there was no purpose in applying the hobble. Moreover, APD policy advises removal of a hobble if a subject is experiencing a medical emergency.

Edgar BWC at 10:00 – 12:40.

Reynoso BWC at 9:30 – 12:10.

APD Policy 306.7.1 Hand Cuffing and Restraint – Guidelines for Use of Leg Restraint.

APD Policy 309.7 Conducted Electrical |

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Weapon – Medical Treatment.<br><br>Carotid Restraint Technique Manual at 111, 121. |
| 50. Perkins continued to actively resist by moving and stiffening his legs so the officers could not bend them at the knee to attach the hobble to his feet, and it took over a minute to bring his feet into the correct position for attaching the hobble.  The officers advised Perkins "bend your knees" several times, and when he complied they were able to place his feet in the correct position.  While this occurred, | 50. Edgar Decl., ¶ 16; Exh. 5, 15:55 - 17:12; Morrison Decl., ¶ 6; Exh. 7, 3:37 - 4:44. | 50. <u>Disputed.</u><br>The Defendant Officers all received training on positional, also called restraint asphyxia and thus knew or should have known the dangers of putting weight on a prone subject's back, especially when they are experiencing a medical emergency.<br><br>Wang Depo. at 25:21-26:22.<br><br>Lee Depo. at 20:24-21:11, 77:23-78:18<br><br>Reynoso Depo. at 41:5-22. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| Perkins continued to move his feet and hands, and nothing indicated that his condition had changed, that his breathing was impaired, or that he was in distress. | | Edgar Depo. at 56:17-57:23, 58:10-59:11. Morrison Depo. at 24:1-8 APD training advises that muscular convulsions are a side effect of the carotid hold and can indicate a medical emergency. Mr. Perkins was not resisting, he was merely convulsing due to the serious medical emergency caused by the Defendant Officers unreasonable use of force and subsequent denial of timely medical care. While the hobble was being applied, Mr. Perkins was left in a prone position, a position known to contribute to positional asphyxia, for an additional five minutes. During this time, both Defendant Edgar and |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | Reynoso were putting weight on Mr. Perkins back, pushing his knees into his back and keeping him from rolling into a recovery position. Mr. Perkins was still nonverbal, had not stopped experiencing muscle convulsions, and was not breathing normally, all evidence that Mr. Perkins was still in the midst of a medical emergency. |
| | | Edgard Depo. at 25:14-26:1. |
| | | Edgar BWC at 12:30 – 17:12. |
| | | Reynoso Depo. at 41:5-22. |
| | | Reynoso BWC at 12:00 – 17:00. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

51. The officers then began attaching the hobble restraint and, as they completed that task a minute later, rolled Perkins onto his side.

51. Edgar Decl., ¶ 17; Exh. 5, 18:24; Reynoso Decl., ¶ 16; Morrison Decl., ¶ 8; Exh. 7, 6:00.

51. <u>Disputed in Part.</u>

The Defendant Officers were applying the hobble for over two and a half minutes. During this time Defendant Reynoso had his knee firmly on Mr. Perkins shoulder as Defendant Edgar leaned across Mr. Perkins lower back, compressing Mr. Perkins trunk into the cement as they pulled his feet towards his buttocks. Defendant Morrison then sat on Mr. Perkins legs for over a minute as he pushed on Mr. Perkins feet, further compressing his trunk into the ground.

The Defendant Officers were trained on the dangers of positional asphyxia and thus knew or should have known

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL
MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | that three officers compressing the trunk of a man who was experiencing a medical emergency was dangerous. Edgar BWC at 15:42 – 18:24, 16:44, 16:51, 17:04 – 18:10. Reynoso BWC at 15:00 – 18:00. Morrison depo. at 24:1-8. Reynoso Depo. at 41:5-22, 41:23-42:11, 42:13-43:5, 43:7-18. Lee Depo. at 77:23-78:18. APD Roll Call Training – P.E.P. Technique Review at ANA – 00424. (Lacy Decl. Ex 22). |
| 52. The officers observed that Perkins had lost consciousness. Officer Reynoso | 52. Edgar Decl., ¶ 17-18; Exh. 5, 18:38 - 24:19; Reynoso Decl., ¶ 16; Exh. 6, 18:08 - 23:46; | 52. <u>Disputed.</u> Mr. Perkins lost consciousness before the Defendant Officer's |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| promptly ran to his vehicle to retrieve medical supplies, and the officers immediately commenced CPR. The officers continued to apply emergency medical aid until paramedics arrived and took over, approximately five minutes later. | Morrison Decl., ¶ 9; Exh. 7, 7:23 - 11:50. | finished applying the hobble and rolled him onto his side. Mr. Perkins was not breathing and was turning blue. Despite paramedics being on scene, Mr. Perkins having been beaten, Tasered multiple times, subjected multiple applications of the carotid hold, hobbled, and compressed by three, the Defendant Officers chose not to summon emergency medical personnel and instead began administering CPR themselves while Mr. Perkins was still handcuffed with his hands behind his back, in contravention of APD training.

David Michael Perkins described the Defendants as pushing too hard and |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**The Law Offices of John L. Burris**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | | |
|---|---|---|
| | | pounding on Mr. Perkins chest to the point that it was scary. Mr. Perkins never regained consciousness in the six minutes that the Defendant Officers were attempting CPR. Edgar Depo. at 43:10-13. Edgar BWC at 18:20 – 24:30. Uncle Mike Depo. at 57:25-60:12, 88:7-89:8, 107:12-19. Edgar Depo. at 43:10-13. Carotid Restraint Technique Manual at 111. |
| 53. When the paramedics arrived, Officers Edgar and Reynoso advised them regarding what had occurred, including | 53. Edgar Decl., ¶ 18; Exh. 5, 24:26 - 25:00; Reynoso Decl., ¶ 17; Exh. 6, 24:00. | 53. <u>Undisputed.</u> |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | | |
|---|---|---|
| that Perkins had been tased. | | |
| 54. Officer Edgar informed one of the paramedics that the carotid hold had been applied to Perkins. | 54. Edgar Decl., ¶ 18; Exh. 5, 30:13 - 30:16. | 54. <u>Undisputed.</u> |

## II.   PLAINTIFF'S ADDITIONAL MATERIAL FACTS

| PLAINTIFFS' ADDITIONAL MATERIAL FACT | PLAINTIFFS' SUPPORTING EVIDENCE |
|---|---|
| 1. On October 27, 2018 at about 8:30 a.m., Defendants Wang and Lee responded to a call for service regarding an assault at Madison Square Apartments located at 2235 W. Broadway, in Anaheim, California. | Wang Depo. at 38:16-39:15, 39:16-40:10.<br><br>Lee Depo. at 37:18-38:19, 38:21-39:8. |
| 2. Upon their arrival at the apartment complex, Defendants Wang and Lee contacted apartment complex staff who alleged decedent had committed | Lee Depo at 39:11-40:12, 40:13-41:2, 41:3-5<br><br>Wang Depo at 42:12-43:6 |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| a misdemeanor battery by striking a maintenance worker in the forehead. | |
| 3. After speaking with the apartment staff, Defendants Wang and Lee decided to investigate the matter further and contact decedent at apartment A-115. | Wang Depo at 44:13-45:8, 42:23-43:22 |
| 4. Decedent, Justin Perkins, suffered from mental illness including bipolar disorder; his capacity and mindset were similar to that of a twelve-year-old child. Mr. Perkins was diagnosed as bipolar when he was 18 years old. | Uncle Mike Depo. at 23:13-24:2, 53:21-56:16, 69:11-70:17, 105:12-21, 105:22-107:11.<br><br>Teresa Perkins Depo. at 30:10-12 |
| 5. Mr. Perkins had a fear of police officers due to his prior knowledge of the Thomas Kelly case and his own prior interactions with police officers. | Teresa Perkins Depo. at 33:8-34:12, 34:13-35:2, 70:21-71:10, 122:7-123:11. |
| 6. All of the Defendant Officers were trained according to Police Officer Standards and Techniques (hereinafter POST) and are thus familiar and certified in POST protocols. | Lee Depo. at 17:11-18:7.<br><br>Wang Depo. at 19:11-20:23.<br><br>Edgar Depo. at 50:21-51:21.<br><br>Reynoso Depo. at 22:14-23:20.<br><br>Morrison Depo. at 18:17-19:16. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| 7. All of the Defendant Officers were trained on the carotid hold at the Police Academy or APD, or both. The Defendant Officers were trained that it is especially dangerous to apply the carotid during a dynamic struggle. The Defendant Officers were also trained that the carotid restraint should never be attempted for more than 30 seconds as it could impair the subject's ability to breath. Defendant Officers are also trained not to attempt multiple applications of the carotid hold within a 24-hour period. After the carotid restraint has been applied officers are trained to immediately assess the subject's vital signs. If vital signs are not present, officers are trained to begin CPR and establish an airway. If vital signs are present but the subject does not wake up within 20-30 seconds, that is deemed a medical emergency. If the subject does not regain full consciousness after 30 seconds, that is deemed a medical emergency. | Edgar Depo. at 42:17-43:9, <br><br> Morrison Depo. at 20:9-21:16, 22:14-23:12, 24:9-16, 24:25-25:16, 30:13-31:2. <br><br> Reynoso Depo. at 26:18-27:24, 27:25-28:7, 29:4-17, 29:19-30:25, 31:2-8, 31:9-22, 31:23-33:7, 34:14-35:4, 35:5-19 <br><br> Wang Depo. at 25:21-26:22, 28:22-29:18, 31:5-31:20, 33:12-35:6, 35:7-36:22 <br><br> Lee Depo. at 19:11-20:12, 29:21-30:9, 30:10-21, 30:22-31:9, 31:10-15, 31:16-32:9, 79:18-80:4 <br><br> APD Policy 300 – Use of Force. <br><br> Carotid Control Hold by Anaheim Police Department Arrest and Control Staff. <br><br> Carotid Restraint Technique Manual at 2-9, 19-20. <br><br> Carotid Control Hold by APD Arrest and Control Staff. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL
MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| | Carotid Restraint Control Hold Instructor Manual at slide 14-15, 17, 19, 21, 22, 49. |
| 8. All of the Defendant Officers were trained on Taser use at the Police Academy or APD, or both. APD Policy dictates that multiple Taser applications should be avoided unless the need outweighs the high risk of injury to the subject. APD Policy also dictates that officers must inform both supervisors and medics of any use of a Taser. | Edgar Depo. at 58:10-59:11<br><br>Morrison Depo. at 23:14-22, 27:22-29:3<br><br>Reynoso Depo. at 35:21-36:12, 38:12-39:4, 40:23-41:3<br><br>Wang Depo. at 31:21-32:22, 33:12-35:6, 35:7-36:22,<br><br>Lee Depo. at 28:21-29:7, 29:8-20, 30:22-31:9, 31:10-15<br><br>APD Policy 300 – Use of Force.<br><br>APD Policy 309 – Conducted Electrical Weapon.<br><br>APD Roll Call Training – P.E.P. Technique Review at ANA – 00424. |
| 9. All of the Defendant Officers were trained on positional, or restraint, asphyxia at the Police Academy or APD, or both. The Defendant Officers were trained that putting weight on a subjects back while they are in the | Morrison Depo. at 24:1-8<br><br>Reynoso Depo. at 41:5-22<br><br>Lee Depo. at 77:23-78:18 |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| prone position can impair breathing and can be fatal. | |
| 10. However, Defendant Edgar, a duly sworn and certified member of the APD, testified that he has never been trained on positional asphyxia despite all of the other APD officers having been trained by APD on positional asphyxia. | Edgar Depo. at 24:7-17.<br><br>Morrison Depo. at 24:1-8.<br><br>Lee Depo. at 77:23-78:18.<br><br>APD Roll Call Training – P.E.P. Technique Review at ANA – 00424. |
| 11. All of the Defendant Officers were trained on detaining people with mental illness at the Police Academy or APD, or both. Their training taught them to approach in a non-threatening manner when contacting a mentally impaired person in the field. It taught them to allow time for the mentally impaired individual to assess and consider voluntary compliance. They were trained to establish rapport with the mentally impaired individual. | Reynoso Depo. at 44:20-46:6, 46:7-48:4, 48:5-17.<br><br>Wang Depo. at 50:23-51:21, 51:22-52:22, 52:23-54:14.<br><br>Lee Depo. at 31:16-32:9.<br><br>Interacting Effectively with Mentally Ill Presentation. (Lacy Decl. Ex 23). |
| 12. All of the Defendant Officers were trained on the hobble restraint at the Police Academy or APD, or both. APD policy dictates subjects should not be kept on their stomach for | Edgar Depo. at 42:17-43:9.<br><br>Morrison Depo. at 25:17-26:16, 31:3-24, 32:9-33:17. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| extended periods of time as it can lead to positional, or restraint, asphyxia. APD policy also mandates hobble devices be removed if the subject is experiencing a medical emergency. | Reynoso Depo. at 51:4-52:2, 52:4-53:14, 54:5-19.<br><br>APD Policy 306 - Handcuffing and Restraints.<br><br>P.O.S.T. Perishable Skills – Arrest and Control Training. (Lacy Decl. Ex 24). |
| 13. Defendants Wang and Lee brought all this training with them to continue in their investigation of a potential misdemeanor committed out. However, they disregarded their training and well settled law and soon began a physical confrontation, dangerously escalating the encounter. | Lee BWC at 4:13, 5:04-5:09.<br><br>Lee Depo. at 17:11-18:7. 19:11-20:12, 28:21-29:7, 29:8-20, 29:21-30:9, 30:10-21, 30:22-31:9, 31:10-15, 31:16-32:9, 33:2-21, 45:20-25; 46:11-47:6; 47:7-24; 48:14-49:2, 77:23-78:18, 79:18-80:4.<br><br>Wang BWC at 4:16-4:20, 5:07-5:13.<br><br>Wang Depo. at 19:11-20:23, 25:21-26:22, 28:22-29:18, 31:5-31:20, 31:21-32:22, 33:12-35:6, 35:7-36:22, 56:25-58:2; 58:3-58:18; 58:19-59:14, 62:2-16, 63:2-64:12.<br><br>APD Policy 300 – Use of Force. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

|  | APD Policy 306 - Handcuffing and Restraints.

APD Policy 309 – Conducted.

Electrical Weapon.

APD Roll Call Training – P.E.P. Technique Review at ANA – 00424. Interacting Effectively with Mentally Ill Presentation.

Carotid Restraint Technique Manual at 2-9, 19-20.

Carotid Control Hold by APD Arrest and Control Staff.

Carotid Restraint Control Hold Instructor Manual at slide 14-15, 17, 19, 21, 22, 49. |
|---|---|
| 14. After knocking on the door of apartment A-115 Defendants Wang and Lee contacted decedent, a White male in his mid-thirties with obvious and apparent mental disabilities. | Lee Depo at 42:23-43:22.

Lee BWC at 1:53 – 4:12.

Wang Depo at 45:23-47:7, 49:11-50:22.

Wang BWC at 1:55 – 4:14. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| | |
|---|---|
| 15. Thereafter Defendant Wang began questioning decedent about a possible fight and decedent revealed that he was assaulted by the maintenance worker. | Wang Depo at 45:23-47:7, 48:22-49:10<br>Wang BWC at 2:01-2:15.<br>Lee BWC at 1:59 – 2:07. |
| 16. As the Defendant Officers continued questioning decedent, they also learned that he was taking medications for anxiety and other behavioral disorders. | Wang Depo at 49:11-50:22.<br>Wang BWC at 2:40 – 2:50. |
| 17. The decedent was clearly confused by the questioning and told the defendant officers that he did not want to fight. Nonetheless, Wang and Lee insisted decedent come out of his apartment to allow them to question him more. | Lee BWC at 4:17 -4:33.<br>Wang BWC at 4:20 – 4:35. |
| 18. After some brief continued discussion and decedent attempting to end the conversation, decedent attempted to shut the front door of the apartment. | Wang Depo. at 56:25-58:2, 58:3-58:18, 59:15-60:10.<br>Lee Depo. at 45:20-25, 48:1-13.<br>Wang BWC at 1:58 – 4:01.<br>Lee BWC at 1:55 – 4:12. |
| 19. However, Defendant Wang crossed the threshold of apartment A-115 without a warrant, held the | Wang Depo. at 60:11-61:7.<br>Lee Depo. at 45:20-25, 47:7-24.<br>Lee BWC at 4:13. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| apartment door ajar, and insisted that decedent step outside. | Wang BWC at 4:16-4:20. |
| 20. Both Defendants Wang and Lee were trained and understood the law does not allow them entry into a person's home without a warrant and exigent circumstances. More importantly, they both knew, or should have known that exigency did not exist in this circumstance. | Wang Depo. at 56:25-58:2; 58:3-58:18; 58:19-59:14, 60:11-61:7.<br><br>Lee Depo. at 45:20-25; 46:11-47:6; 47:7-24; 48:14-49:2.<br><br>Lee BWC at 4:13.<br><br>Wang BWC at 4:16-4:20. |
| 21. After Defendants Wang and Lee ignored the law prohibiting them from forceful entry into decedent's home, ignored P.O.S.T. training guidelines requiring them to report the matter to a supervisor and/or obtain a warrant, and ignored the obvious need to accommodate decedent's recognizable disability, decedent exited the home and attempted to strike Defendant Wang with a fist. | Wang Depo at 61:8-62:1.<br>Lee Depo at 48:1-13.<br>Wang BWC at 05:00 - 05:10.<br>Lee BWC at 5:02 – 5:12. |
| 22. During the struggle, Defendants Wang and Lee, repeatedly and brutally struck Decedent about his head, face, and body with closed fists and batons. | Wang Depo at 65:12-67:12.<br>Wang BWC at 5:10-6:00<br>Lee Depo at 53:6-18, 53:19-54:4, 54:5-20, 56:1-57:2, 57:3-23, 58:1-20, 58:25-59:9.<br>Lee BWC at 5:12-6:05. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

| 23. Decedent's uncle, Plaintiff David Michael Perkins, and observed Defendants Wang and Lee deliver and profound and significant beating to decedent. | Uncle Mike Depo. at 53:21-56:16. |
|---|---|
| 24. Plaintiff David Michael Perkins stood within feet of the struggle and repeatedly shouted to Defendants Wang and Lee, informing them that decedent suffered from a mental disorder and had been previously diagnosed as bipolar and to stop beating decedent. | Uncle Mike Depo. at 53:21-56:16. |
| 25. After the Defendants started beating him, Mr. Perkins was not fighting back and was merely trying to cover his face from the Defendant Officer's blows. | Uncle Mike Depo. at 72:13-73:2, 73:3-18, 74:12-75:2 |
| 26. Nonetheless, both defendant officers continued their beating of decedent and deploying their TASERS on decedent multiple times in contrast to their training. | Wang Depo at 62:2-63:1, 63:2-64:12. Lee Depo at 55:14-25.<br><br>Wang BWC at 5:07-5:13.<br><br>Lee BWC at 5:04-5:09.<br><br>APD Policy 300 – Use of Force.<br>APD Policy 309 – Conducted Electrical Weapon. |

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| | APD Roll Call Training – P.E.P. Technique Review at ANA – 00424. |
| 27. Finally, Defendant Lee dropped his baton and began to choke Decedent with an unapproved chokehold while Wang continued to physically strike decedent about his head and body. | Lee Depo at 50:25-51:25, 52:1-17. Wang Depo at 65:12-67:12. Uncle Mike Depo at 53:21-56:16. |
| 28. During the attempted chokehold decedent bit and severed a digit of Defendant Lee's right pinky finger. | Lee Depo at 53:6-18. |
| 29. Then, Defendant Lee let go of decedent and Defendant Wang got behind decedent and began to apply the carotid restraint. | Wang Depo at 67:16-69:4, 69:5-70:17. |
| 30. Wang then held the restraint until he heard decedent snoring.  Shortly thereafter Defendant Lee called for paramedics to come to the scene. | Wang Depo. at 74:5-75:12, 83:23-85:16. Wang BWC at 5:59-7:41. |
| 31. After decedent fell unconscious due to the application of the carotid restraint, Wang and Lee sat decedent in a recovery position and relinquished custody to Defendants Edgar and Reynoso. | Wang BWC at 5:59-7:41. Edgar BWC at 4:00 – 4:51. Reynoso BWC at 3:30 – 5:00. |
| 32. Despite decedent's obvious need of medical attention, neither | Edgar Depo. at 22:16-23:11. Reynoso Depo. at 79:8-22. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| Defendant Edgar or Reynoso made a call to request paramedics for decedent. | |
| 33. Defendants Wang, Lee, Edgar, and Reynoso knew, or at the very least should have known, that decedent suffered from mental illness because David Michael Perkins informed Defendants Wang, Lee, and Edgar that decedent suffered from mental illness, including bipolar. David Perkins informed Defendants Wang and Lee as they escalated the situation by engaging Mr. Perkins physically. David Perkins also informed Defendant Edgar that Mr. Perkins suffered from mental illness after Defendant Edgar and Reynoso took custody of Mr. Perkins. | Uncle Mike Depo. at 53:21-56:16, 62:2-19, 63:9-17, 86:1-7. Edgar BWC at 05:00 - 07:45. |
| 34. Defendants Edgar and Reynoso then stood decedent to his feet. However, decedent appeared visually dazed and unable to stand on his own power. Defendants Edgar and Reynoso forced Decedent to walk with their | Edgard BWC at 9:00 – 9:25. Reynoso BWC at 8:30 – 9:00. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| assistance for a few feet before decedent collapsed. | |
| 35. After Decedent collapsed, Defendants Edgar, Reynoso, and Morrison proceeded to apply pressure to Decedent's back while was lying prone on the ground and laboring to breathe, obstructing his ability to breathe. | Edgar BWC at 10:00 – 12:40.<br><br>Reynoso BWC at 9:30 – 12:10.<br><br>Reynoso Depo. at 41:5-22, 41:23-42:11, 42:13-43:5.<br><br>Morrison Depo. at 24:9-16. |
| 36. Defendants Edgar, Reynoso, and Morrison then proceeded to apply a hobble restraint to decedent while it was evident that decedent was still laboring to breathe and in the midst of a medical emergency. Defendants Edgar and Reynoso failed to alert their supervisors or medical staff to the fact decedent was suffering a medical emergency because he had multiple applications of the carotid restraint and multiple applications of an electronic control device. | Edgar BWC at Edgar BWC at 12:30 – 17:12.<br><br>Reynoso BWC at 12:10 – 17:00.<br><br>Morrison BWC at 2:00 – 5:00.<br><br>Reynoso Depo. at 85:4-86:11, 86:25-87:11.<br><br>Morrison Depo. at 39:16-40:30.<br>Lee Depo. at 66:13-18. |
| 37. Defendant Edgar, Reynoso, and Morrison's conduct in applying pressure to decedent's back while he was lying prone on the ground and applying a hobble restraint while | Omalu Depo. at 34:8-23, 37:1-38:11, 67:3-17, 69:1-14, 70:10-71:1, 75:8-14, 75:15-76:8, 76:9-20. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris

9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| decedent was laboring to breathe, exacerbated the physical distress that led to decedent's death. | |
| 38. Mr. Perkins cause of death was asphyxia hypoxic brain injury due to restrain asphyxiation and the manner of death was homicide. | Omalu Depo. at 34:8-23, 70:10-71:1. |
| 39. The initial asphyxiation event that started the chain reaction that culminated in Mr. Perkins death was when Mr. Perkins was Tasered in the back by Defendant Wang. Thus, though Mr. Perkins did not actually expire during compression by the Defendant Officers, the asphyxiation continued and compounded until he eventually succumbed to the injuries caused by the Defendant Officers. The time between the initial asphyxia injury and the time of death is irrelevant as asphyxia injuries continue for some time and any further injury within that recovery time will worsen the injury. | Omalu Depo. at 37:1-38:11, 67:3-17, 69:1-14, 70:10-71:1, 76:9-20. |
| 40. The multiple Taser applications, both in probe and drive-stun mode, by Defendant Wang were the initial | Omalu Depo. at 75:8-14, 75:15-76:8. |

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

The Law Offices of John L. Burris
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

| | |
|---|---|
| asphyxia injuries that started the lethal chain of restraint asphyxia events that led to Mr. Perkins death. | |
| 41. The next link in the chain was the multiple and severe blows that Defendants Lee and Wang delivered to Mr. Perkins' head, face, neck, and body with fists and police batons. | Omalu Depo. at 75:8-14, 75:15-76:8. |
| 42. The next link in the lethal chain of restraint asphyxia events was Defendant Lee and Wang's attempted and successful uses of the carotid restraint. | Omalu Depo. at 75:8-14, 75:15-76:8. |
| 43. The final link in the chain came when Defendants Edgar, Reynoso, and Morrison subjected Mr. Perkins to positional and mechanical pressure while he was handcuffed on the ground in a prone position. | Omalu Depo. at 75:8-14, 75:15-76:8. |

Dated:  January 20, 2021 **THE LAW OFFICES OF JOHN L. BURRIS**

_____/s/ *DeWitt M. Lacy*_____
DeWitt M. Lacy
Attorney(s) for Plaintiff

**PLAINTIFFS' STATEMENT OF CONTROVERTED FACTS, STATEMENT OF ADDITIONAL MATERIAL FACTS, AND CONCLUSIONS OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**