# Exhibit U

**Policy**
**306**

Anaheim Police Department
Anaheim PD Policy Manual

# Handcuffing and Restraints

**306.1   PURPOSE AND SCOPE**
This policy provides guidelines for the use of handcuffs and other restraints during detentions and arrests.

**306.2   POLICY**
The Anaheim Police Department authorizes the use of restraint devices in accordance with this policy, the Use of Force Policy and department training. Restraint devices shall not be used to punish, to display authority or as a show of force.

**306.3   USE OF RESTRAINTS**
Only members who have successfully completed Anaheim Police Department-approved training on the use of restraint devices described in this policy are authorized to use these devices.

When deciding whether to use any restraint, officers should carefully balance officer safety concerns with factors that include, but are not limited to:

- The circumstances or crime leading to the arrest.
- The demeanor and behavior of the arrested person.
- The age and health of the person.
- Whether the person is known to be pregnant.
- Whether the person has a hearing or speaking disability. In such cases, consideration should be given, safety permitting, to handcuffing to the front in order to allow the person to sign or write notes.
- Whether the person has any other apparent disability.

306.3.1   RESTRAINT OF DETAINEES
Situations may arise where it may be reasonable to restrain an individual who may, after brief investigation, be released without arrest. Unless arrested, the use of restraints on detainees should continue only for as long as is reasonably necessary to assure the safety of officers and others. When deciding whether to remove restraints from a detainee, officers should continuously weigh the safety interests at hand against the continuing intrusion upon the detainee.

306.3.2   RESTRAINT OF PREGNANT PERSONS
Persons who are known to be pregnant should be restrained in the least restrictive manner that is effective for officer safety and in no event shall these persons be restrained by the use of leg irons, waist chains or handcuffs behind the body.

No person who is in labor, delivery or recovery after delivery shall be handcuffed or restrained except in extraordinary circumstances and only when a supervisor makes an individualized

determination that such restraints are necessary for the safety of the arrestee, officers or others (Penal Code § 3407; Penal Code § 6030).

### 306.3.3   RESTRAINT OF JUVENILES
A juvenile under 14 years of age should not be restrained unless he/she is suspected of a dangerous felony or when the officer has a reasonable suspicion that the juvenile may resist, attempt escape, injure him/herself, injure the officer or damage property.

### 306.3.4   NOTIFICATIONS
Whenever an officer transports a person with the use of restraints other than handcuffs, the officer shall inform the jail staff upon arrival at the jail that restraints were used. This notification should include information regarding any other circumstances the officer reasonably believes would be potential safety concerns or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration) that may have occurred prior to, or during transportation to the jail.

## 306.4   APPLICATION OF HANDCUFFS OR PLASTIC CUFFS
Handcuffs, including temporary nylon or plastic cuffs, may be used only to restrain a person's hands to ensure officer safety.

Although recommended for most arrest situations, handcuffing is discretionary and not an absolute requirement of the Department. Officers should consider handcuffing any person they reasonably believe warrants that degree of restraint. However, officers should not conclude that in order to avoid risk every person should be handcuffed, regardless of the circumstances.

In most situations handcuffs should be applied with the hands behind the person's back. When feasible, handcuffs should be double-locked to prevent tightening, which may cause undue discomfort or injury to the hands or wrists.

In situations where one pair of handcuffs does not appear sufficient to restrain the individual or may cause unreasonable discomfort due to the person's size, officers should consider alternatives, such as using an additional set of handcuffs or multiple plastic cuffs.

Handcuffs should be removed as soon as it is reasonable or after the person has been searched and is safely confined within a detention facility.

## 306.5   APPLICATION OF SPIT HOODS/MASKS/SOCKS
Spit hoods/masks/socks are temporary protective devices designed to prevent the wearer from biting and/or transferring or transmitting fluids (saliva and mucous) to others.

Spit hoods may be placed upon persons in custody when the officer reasonably believes the person will bite or spit, either on a person or in an inappropriate place. They are generally used during application of a physical restraint, while the person is restrained, or during or after transport.

Officers utilizing spit hoods should ensure that the spit hood is fastened properly to allow for adequate ventilation and that the restrained person can breathe normally. Officers should provide assistance during the movement of restrained individuals due to the potential for impaired or

*Handcuffing and Restraints*

distorted vision on the part of the individual. Officers should avoid comingling individuals wearing spit hoods with other detainees.

Spit hoods should not be used in situations where the restrained person is bleeding profusely from the area around the mouth or nose, or if there are indications that the person has a medical condition, such as difficulty breathing or vomiting. In such cases, prompt medical care should be obtained. If the person vomits while wearing a spit hood, the spit hood should be promptly removed and discarded. Persons who have been sprayed with oleoresin capsicum (OC) spray should be thoroughly decontaminated including hair, head and clothing prior to application of a spit hood.

Those who have been placed in a spit hood should be continually monitored and shall not be left unattended until the spit hood is removed. Spit hoods shall be discarded after each use.

### 306.6   APPLICATION OF AUXILIARY RESTRAINT DEVICES

Auxiliary restraint devices include transport belts, waist or belly chains, transportation chains, leg irons and other similar devices. Auxiliary restraint devices are intended for use during long-term restraint or transportation. They provide additional security and safety without impeding breathing, while permitting adequate movement, comfort and mobility.

Only department-authorized devices may be used. Any person in auxiliary restraints should be monitored as reasonably appears necessary.

### 306.7   APPLICATION OF LEG RESTRAINT DEVICES

Leg restraints may be used to restrain the legs of a violent or potentially violent person when it is reasonable to do so during the course of detention, arrest or transportation. Only restraint devices approved by the Department shall be used.

In determining whether to use the leg restraint, officers should consider:

(a)   Whether the officer or others could be exposed to injury due to the assaultive or resistant behavior of a suspect.

(b)   Whether it is reasonably necessary to protect the suspect from his/her own actions (e.g., hitting his/her head against the interior of the patrol unit, running away from the arresting officer while handcuffed, kicking at objects or officers).

(c)   Whether it is reasonably necessary to avoid damage to property (e.g., kicking at windows of the patrol unit).

#### 306.7.1   GUIDELINES FOR USE OF LEG RESTRAINTS

When applying leg restraints the following guidelines should be followed:

(a)   If practicable, officers should notify a supervisor of the intent to apply the leg restraint device. In all cases, a supervisor shall be notified as soon as practicable after the application of the leg restraint device.

Copyright Lexipol, LLC 2018/08/16, All Rights Reserved.
Published with permission by Anaheim Police Department

- (b) Once applied, absent a medical or other emergency, restraints should remain in place until the officer arrives at the jail or other facility or the person no longer reasonably appears to pose a threat.

- (c) Once secured, the person should be placed in a seated or upright position, secured with a seat belt, and shall not be placed on his/her stomach for an extended period, as this could reduce the person's ability to breathe.

- (d) The restrained person should be continually monitored by an officer while in the leg restraint. The officer should ensure that the person does not roll onto and remain on his/her stomach.

- (e) The officer should look for signs of labored breathing and take appropriate steps to relieve and minimize any obvious factors contributing to this condition.

- (f) When transported by ambulance/paramedic unit, the restrained person should be accompanied by an officer when requested by medical personnel. The transporting officer should describe to medical personnel any unusual behaviors or other circumstances the officer reasonably believes would be potential safety or medical risks to the subject (e.g., prolonged struggle, extreme agitation, impaired respiration).

### 306.8   REQUIRED DOCUMENTATION

If an individual is restrained and released without an arrest, the officer shall document the details of the detention and the need for handcuffs or other restraints. Documentation of the incident shall be made to record the details of the detention, including the need for handcuffs and name of the detainee. This documentation shall be made by either General Offense report (GO) or Street Check (SC).

If an individual is arrested, the use of restraints other than handcuffs shall be documented in the related report. The officer should include, as appropriate:

- (a) The amount of time the suspect was restrained.
- (b) How the suspect was transported and the position of the suspect.
- (c) Observations of the suspect's behavior and any signs of physiological problems.
- (d) Any known or suspected drug use or other medical problems.